[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————

No. 05-12398

————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00008 CV-DHB-1

FIRST UNITED PENTECOSTAL CHURCH,

Plaintiff-Appellee,

versus

GUIDEONE SPECIALTY MUTUAL INSURANCE COMPANY,

Defendant-Appellant.

————————

Appeal from the United States District Court
for the Southern District of Georgia

————————

**(June 28, 2006)**

Before ANDERSON and DUBINA, Circuit Judges, and ALBRITTON*, District
Judge.

PER CURIAM:

————————

*Honorable William H. Albritton, III, United States District Judge for the Middle District of
Alabama, sitting by designation.

Appellant, GuideOne Speciality Mutual Insurance Company ("GuideOne"), appeals the district court's final judgment following the jury's verdict awarding damages to First United Pentecostal Church ("Church") on its breach of contract claim. GuideOne further appeals the district court's order denying its Motion for Judgment as a Matter of Law as to the Church's claim for bad faith damages. For the reasons discussed below, we affirm.

## I. FACTS

During the relevant time period at issue in this case, the Church was insured by GuideOne against property damage. In November 2002, the Church filed a claim with GuideOne for damage to its roof, which included cracks in the roof decking that had pierced the roof and cracks in the members, or beams, of one of the trusses[1] supporting the roof. Relying on its engineer's expert's report opining that the trusses were damaged and repaired more than thirteen years ago, and that wind did not cause or worsen the roof's condition, GuideOne denied coverage to the Church citing its exclusion for "faulty repairs."[2] Unsatisfied with GuideOne's

---

[1]A truss is a triangle composed of members that support the roof. A truss consists of top cord members, which are the sloping members, bottom cord members, and diagonal members within the truss.

[2]Specifically, the policy's exclusion provides in part,

We will not pay for loss or damage caused by or resulting from any of the following, 3.a.

2

conclusions, the Church retained its own engineer. Its engineer concluded that a combination of hidden decay and wind, which were covered losses under the policy, caused the beams to crack in the roof.[3] The Church then sent a demand letter with an attached list of damages, asserting additional "secondary water damage due to vandalism of the church during which relay or other electrical component of the air conditioner was stolen while the church was unoccupied that resulted in additional moisture and mildew damage to the basement."

During this time GuideOne also obtained weather reports for the period of time in which the Church initially claimed the damage occurred, November 2002,

---

through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

. . .

[3]c. Faulty, inadequate or defective:

. . .

Design, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction . . . .

(R. Vol. 1, Ct. Ex. 1 at 3-4). A covered "Cause of Loss" includes "windstorm." (R. Vol. 1, Ct. Ex. 1 at 8).

[3]The policy covered "damage . . . caused by collapse of a building . . if the collapse is caused by . . . [h]idden decay . . . ." (R. Vol. 1, Ct. Ex. 1 at 7). Further, as noted above, a covered "Cause of Loss" includes damage caused by wind. (R. Vol. 1, Ct. Ex. 1 at 8).

which reported maximum winds of 10 mph in the area.[4]  Consequently, GuideOne again denied coverage for the damage to the roof, and asserted that the damage to the basement was a separate claim that was additionally denied because the direct physical damage was the cost of the replacement of the fuses, which was less than the $250 deductible under the policy's provision for loss by theft.

The Church filed suit against GuideOne for breach of the insurance contract.  The Church sought damages for construction and repair expenses to the roof and basement.  Because the Church was advised that it was unsafe to continue to occupy the building as result of the damage to the roof, it moved its services to the nearby Assembly of God church, and thus sought damages for payments made to the Assembly of God church for use of its sanctuary, and reduction in offerings it claimed were causally related to its displacement.  Additionally, the Church claimed that GuideOne denied its claims in bad faith and sought bad faith penalties and attorneys' fees pursuant to O.C.G.A. § 33-4-6.

The trial was bifurcated into a liability phase for breach of contract and a bad faith phase.  Over the objection of GuideOne, the district court permitted the Church's expert to testify based on his experience that the damage to the roof was

---

[4]GuideOne relied, in part, on the November 2002 weather reports to deny the Church's claim until the Church, after filing suit and during the discovery in this litigation, asserted that the damage was caused by a windstorm in May 2002.

the result of a combination of hidden decay and wind. The jury returned a verdict in favor of the Church in the liability phase, finding that the damage to the roof was caused in part by a windstorm or hidden decay, and thus was covered under the policy. The jury awarded the entire amount of damages the Church requested, including $148,518.60 for construction and repair expenses to the roof and basement, $28,600.00 for payments made to Assembly of God designated as "rent payments," $38,686.00 for loss offering revenue, $3,458.07 for storage costs, and $6,031.19 for interest and fees on a loan.

In the second phase of the trial, specifically before any evidence was presented, GuideOne moved for judgment as a matter of law as to the bad faith claim arguing that there was insufficient evidence that its denial was made in bad faith. Relying on the 2001 amendment to O.C.G.A. § 33-4-6, providing that "the testimony or opinion of an expert witness [shall not] be the sole basis for summary judgment or a directed verdict on the issue of bad faith," the district court denied GuideOne's motion. After the close of all evidence, GuideOne again moved for judgment as a matter of law, which again was denied. Accordingly, the claim was sent to the jury where it awarded the Church $75,000 and authorized the district court to award attorneys' fees and expenses.

5

In accordance with the jury's findings, the district court entered final judgment awarding $198,518.60 in damages to the Church on its breach of contract claim.[5] Additionally, the district court awarded $75,000 on the bad faith claim and $55,761.64 for attorneys' fees and expenses. GuideOne appeals the district court's final judgment, arguing that the damages awarded for construction and repairs expenses, rent, and loss offerings revenue were not supported by sufficient evidence. Guideone further appeals the district court's denial of its motion for judgment as a matter of law.

## II. ISSUES

1. Whether the district court erred in relying on the 2001 amendment to O.C.G.A. § 33-4-6 to find that there was sufficient evidence of bad faith for the claim to go to the jury.

2. Whether the district court abused its discretion by admitting the Church's expert's testimony.

3. Whether the award of damages for payments made to Assembly of God, loss offering revenue, and construction and repair expenses for the roof and basement were supported by sufficient evidence.

---

[5]Upon direction of the district court, the Church agreed to eliminate the jury's award for interest and loan fees and reduce the award for loss offering to comply with the policy's $50,000 limit.

## III. STANDARDS OF REVIEW

A denial of a motion for judgment as a matter of law is reviewed *de novo*. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997). "We review for abuse of discretion the district court's decisions regarding the admissibility of expert testimony and the reliability of an expert opinion." *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc). "In considering the sufficiency of the evidence that supports the jury's verdict, we review the evidence 'in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party.'" *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (quoting *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995)).

## IV. DISCUSSION

A. *Judgment as a Matter of Law*

GuideOne appeals the district court's denial of its Motion for Judgment as a Matter of Law, arguing that district court erred in relying on the 2001 amendment to Georgia's bad faith penalty statute, O.C.G.A. § 33-4-6, to find that there was sufficient evidence of bad faith for the claim to go to the jury.[6] Georgia's bad faith

---

[6]The Church's contention that GuideOne is improperly appealing the district court's denial of its motion for summary judgment as to the bad faith claim is without merit. This court has held that it will not review the pretrial denial of summary judgment after a full trial and final judgment

penalty statute provides that bad faith penalties may be awarded when the insurer refuses in bad faith to pay a loss which is covered under the policy within 60 days after a demand has been made. O.C.G.A. § 33-4-6. In 2001, the statute was amended to provide that, "[t]he action for bad faith shall not be abated by payment after the 60 day period *nor shall the testimony or opinion of an expert witness be the sole basis for a summary judgment or directed verdict on the issue of bad faith*." *Id.* (emphasis added). GuideOne argues that the 2001 amendment did not preclude the district court from granting judgment as a matter of law in its favor because it did not rely solely on its expert's testimony to argue that its reasons for denying the Church's claim were reasonable.

After carefully reviewing the record, we conclude that GuideOne made a Motion for Judgment as a Matter of Law pre-verdict, pursuant to Fed. R. Civ. P. 50(a); however, it failed to renew its motion postverdict or file a motion for new trial pursuant to Rule 50(b). Because GuideOne failed to renew its motion or file a post-trial motion for new trial, we are precluded from entering judgment as matter of law in GuideOne's favor or granting it a new trial based on the sufficiency of the

___

on the merits. *See Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1284 (11th Cir. 2001). However, GuideOne does not appeal the district court's order denying summary judgment in its favor; rather, it asserts that the district court relied on the same erroneous reasoning to deny its summary judgment motion as it used to deny its motion for judgment as a matter of law. It is clearly not appealing the district court's order denying summary judgment, but rather appealing the district court's denial of its motion for judgment as a matter of law.

8

evidence. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 126 S. Ct. 980 (2006); *HI Limited P'ship v. Winghouse of Fla., Inc.*, No. 05-10074, __ F.3d __ (11th Cir. June 15, 2006); *Frazier v. Thomas*, No. 05-15489, 2006 WL 1049407 (11th Cir. April 21, 2006) (unpublished); *McDonald v. Alpen House Ltd.*, No. 05-15904, 2006 WL 1627110 (11th Cir. June 7, 2006) (unpublished). As the Supreme Court in *Unitherm* explained, the

> preverdict motion cannot form the basis of [the appellant]'s appeal because the denial of that motion was not in error. It was merely an exercise of the [d]istrict [c]ourt's discretion, in accordance with the text of the Rule and the accepted practice of permitting the jury to make an initial judgment about the sufficiency of the evidence.

126 S. Ct. at 988-89. The Court emphasized the necessity of filing a postverdict motion, holding that the "[d]etermination of whether a new trial should be granted or judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witness and has the feel of the case which no appellate printed transcript can impart." *Id.* at 985-86 (citation omitted).

We must affirm the district court's order due to counsel's failure to renew its motion postverdict or file a post-trial motion for new trial pursuant to Rule 50(b).

B. *Damages*

GuideOne essentially challenges the sufficiency of the evidence supporting the district court's award of damages for loss offerings revenue, payments made to

9

Assembly of God, and construction and repair expenses for the roof and basement. Specifically, GuideOne argues that the damages for loss offerings revenue were speculative because there was insufficient evidence that the reduction in offerings was causally related to the Church's displacement. GuideOne further argues that sufficient evidence was presented that payments made to Assembly of God were voluntary, and thus not recoverable under Georgia law. Finally, GuideOne argues that the entire award for repair and construction expenses should be reversed because there was insufficient evidence for the jury to allocate the construction and repair expenses between those for the roof and those for the basement. GuideOne contends that this was error because the jury could have found that the damage to the basement was not covered under the policy.

After careful review of the record, we hold that the Church presented sufficient evidence to support the district court's award of damages. The Church presented sufficient evidence at trial that the loss in offerings was causally related to its displacement. Further, the evidence presented at trial supported the jury's conclusions that the payments to Assembly of God were necessary, and thus recoverable. Finally, the jury was presented with sufficient evidence from which it could have allocated the repair and construction expenses between the roof and the basement.

C. *Admittance of Expert Testimony*

Lastly, GuideOne argues that the district court abused its discretion by failing to perform its gate-keeping role as required under Fed. R. Evid. 702 when it allowed the Church's expert to testify as to the cause of the roof damage based on his experience alone.[7] "It is very much a matter of discretion with the trial court whether to permit the introduction of [expert] evidence, and we will not reverse the decision of the trial court regarding the exclusion or admission of such evidence unless the trial court's decision is 'manifestly erroneous.'" *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998). After thorough review of the record, we conclude that the district court's decision to admit the Church's expert testimony was not "manifestly erroneous."

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's final judgment entered on the jury's verdict.

AFFIRMED.

---

[7]The Church contends that GuideOne failed to properly preserve its objection to the expert's testimony. After reviewing the record, we conclude that GuideOne timely objected to the expert's testimony, and that the district court clearly ruled at that time that it would allow such testimony. Accordingly, GuideOne did not waive its objection when it failed to renew its objection when the expert continued testifying after the district court's ruling. *See* Fed. R. Evid. 103(a) (providing that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence . . . a party need not renew an objection . . . to preserve a claim of error for appeal.").

11