EQUITABLE GAS CO.

*v.*

GEORGE KINCAID, JR. *et al.*

(NO. 14478)

Decided December 18, 1981.

---

*Charles E. Anderson and Dennis H. Curry* for plaintiff in error.

*Stephen R. Brooks, Furbee, Amos, Webb & Critchfield,* for defendant in error.

HARSHBARGER, CHIEF JUSTICE:

In this eminent domain proceeding, Equitable Gas Company obtained an easement or right-of-way 50 feet wide and 1,622.57 feet long, across land of George and Wilma Kincaid, to construct and maintain a natural gas transmission line. The Kincaids retained use of the land taken, except they were required to leave in place the Washington coal vein where there was less than 100 feet of cover over it; and they could not erect any structures on the right-of-way or create any hazard to or interfere with use of the pipeline.

A jury returned a $25,000 verdict after hearing sharply conflicting testimony about the value of coal underlying the easement at time of taking. But, the trial court set aside that verdict and granted a new trial because the Kincaids' evidence about coal value apart from the land, was incompetent under the "unit rule" established in *Strouds Creek and Muddlety R.R. Co. v. Herold*, 131 W. Va. 45, 45 S.E.2d 513 (1947). The Kincaids appeal.

The trial court did not have the benefit of our recent pronouncement in *W. Va. Department of Highways v. Berwind Land Co.,* ____ W. Va. ____, 280 S.E.2d 609 (1981), that liberalized the *Strouds Creek* rule to permit an owner of a fee estate to prove the fair market value of land by introducing testimony about the separate value of minerals located on the property.

Appellant's evidence indicated that the highest and best use of their property was strip mining, but when it was taken it was being used as cattle grazing land. Mr. Kincaid testified that fair market value of property taken and damage to the residue equaled $40,000. He stated he had received an offer to lease his property for coal mining purposes for $1.75 per ton royalty for every ton mined and marketed, before appellee took its easement.

An individual with ten years' experience in purchasing coal and buying coal leases testified he had negotiated leases involving the Washington vein nearby and was familar with the Kincaids' property through personal observation and study of geological survey books. He was willing to pay appellants a $1.75 per ton royalty for coal when the easement was taken. Just compensation, based on a coal royalty method of evaluation, was $34,000. Fair market value of the property was $39,000. A realtor and appraiser with substantial appraisal experience who had viewed the property on three occasions testified that there had been sales of coal land in the area and that the fair market value of the Kincaids' property taken and damage to the residue was $37,650. He also used a coal royalty method of valuation and concluded the coal was worth $33,650 in royalty payments.

Equitable's evidence was that Washington coal is a high sulphur, low grade steam coal with no market value, and that the fair market value of the easement was $560. Equitable's appraiser found no record of sales involving Washington coal in his search for comparisons, and did not value any coal underlying the easement. He admitted, however, that in searching for comparisons he did not look for leases.

We believe evidence introduced by property owners giving a separate value for coal as summarized above, is admissible.

> The owner of fee property taken by eminent domain may prove the market value of the land by introducing evidence of the separate value of the elements present in or on the land when it can be shown that (1) the existence and quantity of the element of value can be accurately determined, (2) other factors, such as the expense of production and marketing, were taken into consideration in arriving at the value sought to be introduced, (3) the element is clearly significant in value, and (4) the use of the property for purposes of exploiting that element of value is not inconsistent or incompatible with the highest and best use to which the property may be put or that the subservient use has been devalued to the degree it interferes with the highest and best use of the property taken. The jury should be instructed that the evidence of separate values is only a factor to be considered in determining the total market value of the land; to the extent such separate values are inconsistent with the highest and best use of the land they should be disregarded in arriving at the figure of just compensation. *W. Va. Department of Highways v. Berwind Land Co.*, Syllabus Point 2, ____ W. Va. ____, 280 S.E.2d 609 (1981).

We conclude that the existence and quantity of coal was clearly established by Kincaids' witnesses. (There were no objections to the accuracy of this evidence.) Because the value of coal to appellants was based on a royalty method of evaluation, there was no need to consider expenses of production and marketing. Sharply conflicting evidence about value and market for this coal was considered by the jury and its verdict was within the limits of damages testified to by the witnesses.

It does appear that appellants established values for inconsistent or incompatible uses by placing a specific value on the surface taken, in addition to the coal value. This is a matter of some concern, but reversal is not

required because this verdict was supported by the evidence about coal value alone.

The land owners' evidence of fair market value was not so speculative or conjectural to make it incompetent and inadmissible. There was testimony that they had been offered a coal mining lease with a royalty provision shortly before the taking; and testimony that an expert whose business was acquiring coal leases would have offered the landowners a lease with a specific royalty provision, and evidence of strip mining on property adjoining that of the appellants, support our conclusion. The coal royalty method of evaluation in these circumstances appears a more accurate valuation technique than was employed in *Berwind Land.*

Therefore, the jury verdict should be reinstated and judgment entered thereon.

*Reversed and remanded, with directions.*