# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2015 Term**

_____

No. 14-0428

_____

**FILED**

**May 13, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WEST VIRGINIA DEPARTMENT OF TRANSPORTATION,
DIVISION OF HIGHWAYS AND PAUL A. MATTOX, JR.,
SECRETARY/COMMISSIONER OF HIGHWAYS,**
Petitioners Below, Petitioners

**V.**

**MARGARET Z. NEWTON,**
Respondent Below, Respondent

---

**Appeal from the Circuit Court of Hardy County
Honorable Charles E. Parsons, Judge
Civil Action No. 11-C-30**

**AFFIRMED**

---

**Submitted:  April 22, 2015
Filed: May 13, 2015**

Clarence E. Martin, III
Susan R. Snowden
Martin & Seibert, L.C.
Martinsburg, West Virginia
Attorneys for Petitioners

J. David Judy, III
Judy & Judy
Moorefield, West Virginia
Attorney for Respondent

**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE KETCHUM concurs and reserves the right to file a concurring opinion.**

**SYLLABUS BY THE COURT**

1.      Rule 59(f) of the West Virginia Rules of Civil Procedure does not preclude a party from appealing definitive pretrial rulings of a trial court that are in the record, even though the party failed to file a post-trial motion for a new trial.

2.      "In eminent domain proceedings, the date of take for the purpose of determining the fair market value of property for the fixing of compensation to be made to the condemnee is the date on which the property is lawfully taken by the commencement of appropriate legal proceedings pursuant to W. Va. Code, 54-2-14a, as amended."  Syllabus point 1, *West Virginia Department of Highways v. Roda*, 177 W. Va. 383, 352 S.E.2d 134 (1986).

3.      "When the contractor for the Department of Highways took the landowners' property prior to the institution of lawful condemnation proceedings, the trial judge did not err in refusing to allow the introduction of evidence as to the value of such property on a date prior to the institution of such proceedings."  Syllabus point 2, *West Virginia Department of Highways v. Roda*, 177 W. Va. 383, 352 S.E.2d 134 (1986).

4.      "When a condemnor had prior knowledge that its contractor was selling

a condemnee's coal which had been severed from the land before the institution of lawful condemnation proceedings, the fair market value of the condemnee's coal, removed before the lawful date of take, is the price for which the coal could be sold, ready for loading, by a person desirous of selling to a person wishing to buy, both freely exercising prudence and intelligent judgment as to its value, without consideration of the mining, production, excavation and marketing costs." Syllabus point 3, *West Virginia Department of Highways v. Roda*, 177 W. Va. 383, 352 S.E.2d 134 (1986).

5.      A party's failure to file a post-verdict motion for judgment as a matter of law under Rule 50(b) of the West Virginia Rules of Civil Procedure precludes this Court from reviewing an insufficiency of the evidence claim.

**Davis, Justice:**

This is an eminent domain appeal that was brought by the Petitioners, West Virginia Department of Transportation, Division of Highways and Paul A. Mattox, Jr., Secretary/Commissioner of Highways (collectively "DOH"), from an adverse judgment in the Circuit Court of Hardy County. In seeking a new trial, DOH has set out nine assignments of error. The Respondent, Margaret Z. Newton ("Ms. Newton"), asks this Court to affirm the judgment below.[1] Upon our review of the parties' briefs and oral arguments, the appendix records designated for our consideration, and the pertinent authorities, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The record in the case shows that on June 4, 1980, Ms. Newton sold approximately 37 acres of land, situate in Hardy County, to James S. Parsons.[2] The property deed reserved all mineral rights under the land to Ms. Newton. As a result, Mr. Parsons owned the surface, and Ms. Newton owned the minerals. In 2003, DOH began testing soil on parts of the property purchased by Mr. Parsons. The soil testing was done as part of DOH's preparation for constructing a portion of the Corridor H highway through Mr.

---

[1]Ms. Newton also filed a cross-appeal in which she seeks attorney's fees for the proceeding below.

[2]The land was owned and sold by Ms. Newton and her husband, Paul V. Williams. However, Mr. Williams is now deceased; therefore, no reference will be made to him.

1

Parsons' land. The soil tests revealed significant deposits of limestone under Mr. Parsons' land. By deed dated October 7, 2004, DOH acquired a right-of-way from Mr. Parsons, that involved access to approximately 6.7 acres of his land, in exchange for $33,500.00.

DOH began construction of the highway through Mr. Parsons' land during the period 2006 through 2009. In order to build the highway through Mr. Parsons' land, DOH had to excavate approximately 236,187 tons of limestone from the property. DOH did not contact Ms. Newton, the owner of the limestone, even though DOH appears to have used much of the limestone in building the highway. In May 2010, Ms. Newton filed a mandamus action against DOH seeking to force DOH to institute a condemnation proceeding for the limestone removed from her mineral reservation in the land.[3] An agreed order was entered in March 2011, whereby DOH was required to institute a condemnation proceeding against the limestone interests of Ms. Newton.[4]

After the agreed order was entered, DOH filed the instant condemnation action seeking a determination of whether Ms. Newton was entitled to compensation for removal of the limestone. After a period of discovery, the case was submitted to a condemnation

---

[3]It appears that additional land owners joined the mandamus proceeding against DOH.

[4]Ms. Newton has indicated that a claim for attorney's fees in the mandamus proceeding is still pending in the circuit court.

2

commission on September 20, 2013, as allowed by W. Va. Code § 54-2-5 (1963) (Repl. Vol. 2008). The condemnation commission returned a verdict favorable to DOH. Thereafter, Ms. Newton rejected the decision of the condemnation commission and demanded a jury trial as allowed by W. Va. Code § 54-2-10 (1967) (Repl. Vol. 2008).

The case proceeded to trial on April 7, 2014, with a twelve-person jury as required by law. *See* W. Va. Const. art. 3, § 9. It appears that a special verdict form was submitted to the jury. The special verdict form allowed the jury to determine the amount of limestone excavated and the amount of limestone alienated or remaining on the property; the jury also determined a separate cost per ton for the excavated limestone and the alienated limestone. Based upon the jury's factual findings, the trial court entered an order of judgment on April 16, 2014, that awarded Ms. Newton $941,304.53. This award was made after the trial judge offset the money DOH paid Mr. Parsons for the surface right-of-way. DOH did not file a post-trial motion for new trial or judgment as a matter of law. DOH filed the instant appeal directly from the trial court's order of judgment.

## II.

## STANDARD OF REVIEW

DOH has set out nine assignments of error. Resolving the issues presented in this case requires the application of specific review standards. Consequently, we will not set out any general standard of review. Instead, we will address the standard of review that is specific for each issue.

## III.

## DISCUSSION

On appeal to this Court, DOH has asserted nine assignments of error. We separately will consider each issue.

### A. DOH's Failure to File Post-Trial Motions

Before we address DOH's assignments of error, we must first resolve Ms. Newton's contention that we cannot reach the merits of the appeal because DOH failed to file a post-trial motion for a new trial. According to Ms. Newton, Rule 59(f) of the West Virginia Rules of Civil Procedure precludes consideration of an appeal if a motion for new trial is not filed.[5] DOH contends that the post-trial requirements of Rule 59(f) apply only to issues occurring during the actual trial, and that eight of the issues that have been raised in

[5]Ms. Newton initially raised this issue in an attempt to dismiss DOH's appeal before DOH filed its brief on the merits. This Court summarily denied the motion to dismiss.

4

its appeal involve pretrial rulings. Consequently, DOH argues, Rule 59(f) has no application. Resolving this matter requires this Court to examine the text of Rule 59(f). We apply a *de novo* standard of review of an issue involving the application of the rules of civil procedure. *See* Syl. pt. 4, *Keesecker v. Bird*, 200 W. Va. 667, 490 S.E.2d 754 (1997) ("An interpretation of the *West Virginia Rules of Civil Procedure* presents a question of law subject to a *de novo* review.").[6]

The relevant text of Rule 59(f) states the following:

> If a party fails to make a timely motion for a new trial, after a trial by jury in which judgment as a matter of law has not been rendered by the court, the party is deemed to have *waived all errors occurring during the trial* which the party might have assigned as grounds in support of such motion.[7]

(Emphasis and footnote added). This Court had an opportunity to address the application of Rule 59(f) in *Miller v. Triplett*, 203 W. Va. 351, 507 S.E.2d 714 (1998). In *Miller*, a jury awarded a verdict in favor of the plaintiffs as a result of injuries they sustained in an

---

[6]Rule 71A of the West Virginia Rules of Civil Procedure expressly provides that "[e]minent domain proceedings in the circuit courts are governed by [the] rules of civil procedure." This statement is set out under Rule 71A because "[p]rior to amendments in 1998, only a handful of the rules [of civil procedure] were applicable to eminent domain proceedings." Franklin D. Cleckley, Robin Jean Davis, and Louis J. Palmer, Jr., *Litigation also Handbook on West Virginia Rules of Civil Procedure*, § 71A(a), at 1390 (4th ed. 2012). *See* Syl. pt. 2, *Taylor v. Miller*, 162 W. Va. 265, 249 S.E.2d 191 (1978) (decided under former rule) ("Rule 81(a)(6) of the West Virginia Rules of Civil Procedure expressly excludes eminent domain proceedings from the operation of those Rules.").

[7]Additional text in Rule 59(f) is discussed in Section III.J of this opinion, *infra*.

5

automobile accident. The plaintiffs appealed the favorable verdict and sought a new trial because of the small size of the award. This Court applied Rule 59(f) and declined to address the assignments of error made by the plaintiffs because they failed to file a motion for new trial. In doing so, we held that "if a party fails to make a timely motion for a new trial, Rule 59(f) . . . bars consideration on appeal of alleged errors which occurred during the trial which a party might have assigned as grounds in support of a motion for a new trial." *Miller*, 203 W. Va. at 356, 507 S.E.2d at 719.[8]  *See also* Cleckley, Davis, and Palmer, *Litigation Handbook*, § 59(f), at 1288 ("Under Rule 59(f) failure to [file a] motion for a new trial may sound the death knell of an appeal.").[9]

---

[8]We explained in *Miller* that Rule 59(f), which is not found in federal Rule 59, was originally adopted by this Court as a common law rule. *See* Syl. pt. 3, *State v. Phares*, 24 W. Va. 657 (1884) ("In a case tried by a jury, no matter how many [objections] are taken to rulings of the court made during the trial, unless a motion is made before the trial court to set aside the verdict, and that motion is overruled, all such errors saved will by the appellate court be deemed to have been waived."). *See also* Syl. pt. 1, in part, *Danks v. Rodeheaver*, 26 W. Va. 274 (1885) ("If errors . . . are committed by a court in its rulings during the trial of a case by a jury, the appellate court can not review these rulings, unless . . . a new trial was asked of the court below and refused[.]"). Moreover, because the rules of civil procedure generally did not apply to eminent domain proceedings prior to 1998, this Court applied the common law rule to such proceedings. *See* Syl. pt. 3, *Taylor v. Miller*, 162 W. Va. 265, 249 S.E.2d 191 (1978) ("In an eminent domain case, a motion for new trial must be filed and overruled in order to preserve trial errors for purposes of appellate review.").

[9]A few jurisdictions apply a similar waiver rule. *See Small v. S. Norwalk Sav. Bank*, 205 Conn. 751, 758, 535 A.2d 1292, 1296 (1988) ("The defendant's failure to file a timely motion to set aside the verdict limits this court to ascertaining whether there has been plain error."); *Messick v. Atchison, Topeka & Santa Fe Ry. Co.*, 924 S.W.2d 620, 621 (Mo. Ct. App. 1996); ("The failure to file a motion for new trial in a timely manner preserves nothing for appellate review."); *Kennel v. Thomas*, 804 A.2d 667, 668 (Pa. Super. Ct. 2002) ("Consequently, since the trial court refused to address the merits of appellant's issues raised

(continued...)

The issue raised in the instant case is whether a party may appeal pretrial rulings of a trial court, even though the party failed to file a post-trial motion for a new trial. This issue was not addressed on the merits in *Miller*, but we did allude to it in passing in a footnote as follows:

> We strongly emphasize, however, that failure to make a motion for a new trial after the entry of judgment results only in a waiver of errors *occurring during the trial which the party might have assigned as grounds in support of the motion for a new trial*. It does not waive other alleged errors such as those listed in West Virginia Rule of Civil Procedure 60(b) which includes, for example, an appeal based on fraud, surprise or newly discovered evidence.

*Miller*, 203 W. Va. at 356 n.8, 507 S.E.2d at 719 n.8 (emphasis in original). The commentary to Rule 59(f) by the original drafters of our rules of civil procedure provides:

> As noted by the italicized words in the preceding paragraph, waiver under the Rule applies only to errors occurring during the trial. This would be consistent with past practice as to there being no waiver of errors in rulings as to the pleadings by failure to move for a new trial. This is even more important under the Rules for it would include any error as to any of the pre-trial matters whether or not heretofore deemed pleadings.

Marlyn E. Lugar and Lee Silverstein, *West Virginia Rules of Civil Procedure*, Rule 59(f), at 458 (1960). *See also Stewart v. Ohio River R. Co.*, 38 W. Va. 438, 455, 18 S.E. 604, 610 (1893) ("No motion for new trial is necessary where the error relates to the judgment or

---

[9](...continued)
in his untimely post-trial motions, those issues are waived and not preserved for purposes of appellate review.").

pleading, such as sustaining or overruling demurrer[.]"). It is clear that Professors Lugar and Silverstein understood Rule 59(f) as not having any application to assignments of error that were limited to pretrial rulings.

Therefore, we now hold that Rule 59(f) of the West Virginia Rules of Civil Procedure does not preclude a party from appealing definitive pretrial rulings of a trial court that are in the record, even though the party failed to file a post-trial motion for a new trial.[10]

To the extent that any of DOH's first eight assignments of error comply with our holding,[11] they will be addressed on the merits.[12]

---

[10]Our holding is consistent with Rule 103(b) of the West Virginia Rules of Evidence. The substance of Rule 103(b) is new and was added in 2014. Rule 103(b) provides, in part, that "[o]nce the *court rules definitively on the record* . . . before . . . trial – a party need not renew an objection . . . to preserve a claim of error for appeal." (Emphasis added).

[11]The ninth assignment of error involves filing a post-trial motion for judgment as a matter of law, which is referenced in a part of Rule 59(f) that will be discussed in Section III.J, *infra*.

[12]We will take this opportunity to point out that a review of the merits of pretrial rulings, under the posture of the exception to the waiver rule in Rule 59(f), is very limited. As will be seen in this case, the better practice is to not rely on the waiver exception to filing a motion for new trial because of the extreme limitations imposed upon this Court in conducting a review of the assignments of error. The better practice is always to file a timely motion for new trial because this would permit a full review of pretrial rulings that were properly preserved.

8

### B. DOH's Request That the Circuit Court Determine Whether Ms. Newton Sustained Any Compensable Damage to a Viable Property Right

The first issue raised by DOH is that the circuit court committed error in denying its pretrial request to find that Ms. Newton did not sustain any compensable damage to a viable property right. In essence, DOH is arguing that the limestone it took had no compensable value.[13] In support of this argument, DOH has cited to a specific page number in the appendix, App. p. 0184, where presumably its motion and the trial court's ruling is supposed to be found. However, the page number of the document cited to in the brief is part of DOH's condemnation petition. DOH has not cited to a motion containing the request, nor a definitive ruling by the circuit court denying the request. *See Cooper v. City of Charleston*, 218 W. Va. 279, 290, 624 S.E.2d 716, 727 (2005) ("Judges are not like pigs, hunting for truffles buried in briefs." (internal quotations and citation omitted)).

In essence, DOH is asking this Court to treat an issue set out in its prayer for relief in the condemnation petition as a pretrial motion. An issue set out in a prayer for relief, without more, is not a motion. Moreover, the issue DOH is attempting to bring before this Court goes to the merits of the condemnation petition. To properly raise this issue below, DOH had to at least file a motion for judgment on the pleadings or for summary judgment,

---

[13]DOH also has contended that the limestone was not a mineral. However, this contention is inconsistent with a stipulation DOH made prior to trial. That stipulation, which is more fully discussed in Section III.H, *infra*, states: "The *minerals* reserved by Margaret Z. Newton include limestone and gravel as defined by the Court." (Emphasis added).

9

because a resolution of the issue in DOH's favor would result in a dismissal of the case. DOH has failed to cite to this Court any type of motion that raised the issue and a definitive ruling denying the motion. Without such a motion and definitive ruling on the issue appearing in the record, the first assignment of error was not properly preserved for this Court to rule upon as an exception to the waiver provision in Rule 59(f).

DOH made a similar argument in a petition for a writ of prohibition it filed with this Court on August 10, 2012. We refused the requested writ on August 20, 2012. In that proceeding, DOH also referenced to the issue in its prayer for relief as follows:

> It is therefore axiomatic in any condemnation proceeding that the condemnee must first sufficiently demonstrate an actual and viable ownership interest in the property taken or damaged, before just compensation can even be considered. . . . In that regard, the WVDOH specifically requested that the Court reach a determination on this issue in the Prayer for Relief of its Petition.

The above cited language from the petition for a writ of prohibition makes clear that DOH failed to understand that the rules of civil procedure apply to condemnation proceedings. If DOH wanted the trial court to make a ruling on a dispositive issue set out in the condemnation Petition, it had to file a dispositive motion, *e.g.*, a motion for summary judgment. Trial courts are not obligated to rule upon matters set out in a petition or complaint without a motion being filed asking the court to rule on the matter.

10

### C. Finding DOH Acted in Bad Faith and Sanctioning DOH by Setting the Date of the Take as April 29, 2011

The second assignment of error by DOH is set out in a convoluted manner. The best that we are able to discern from the brief is that DOH contends that, prior to trial, the circuit court found it acted in bad faith and in willful trespass because it removed Ms. Newton's limestone without condemning her mineral interest as required by law. As a consequence of such finding, DOH contends that the circuit court sanctioned it by concluding that the date of the take would be the date of the filing of the condemnation proceeding, April 29, 2011, as required under *West Virginia Department of Highways v. Roda*, 177 W. Va. 383, 352 S.E.2d 134 (1986).[14]

The trial court made findings of fact and conclusions of law in its resolution of the date of the take issue. In reviewing the trial court's pretrial order on this issue, we apply the following standard of review:

> On appeal, this Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.

*Burgess v. Porterfield*, 196 W. Va. 178, 187, 469 S.E.2d 114, 123 (1996) (citations omitted).

---

[14]It was noted in *Roda* that "the date of take [is] the date upon which condemned property is to be valued[.]" *Roda*, 177 W. Va. at 386, 352 S.E.2d at 138.

11

As pointed out, the circuit court applied principles of law from the decision in *Roda* in determining the date of the take in the instant case. The decision in *Roda* was an eminent domain proceeding. The facts in *Roda* revealed that a contractor for DOH removed and sold coal from property without the consent of the landowners, and prior to the filing of a condemnation petition. Subsequent to taking the coal, DOH filed a condemnation petition. The condemnation proceeding ended in favor of the landowners, and DOH appealed. One of the issues raised on appeal by DOH was that the trial court committed error in using the date of the filing of the petition for condemnation as the date of the take. DOH argued that the value of the coal should have been on a date prior to institution of the proceedings.

In resolving the date of the take issue in *Roda*, this Court found that DOH, through its contractor, trespassed on the landowners' property and acted in bad faith in removing and selling their coal without permission. *Roda* noted that "[w]here a trespass is willful, the trespasser shall pay the full value of the mineral at the time he sells or uses it." *Roda*, 177 W. Va. at 388, 352 S.E.2d at 140. Ultimately *Roda* set out the following principles in Syllabus points 1 and 2:

> 1. In eminent domain proceedings, the date of take for the purpose of determining the fair market value of property for the fixing of compensation to be made to the condemnee is the date on which the property is lawfully taken by the commencement of appropriate legal proceedings pursuant to W. Va. Code, 54-2-14a, as amended.

> 2. When the contractor for the Department of Highways

12

took the landowners' property prior to the institution of lawful condemnation proceedings, the trial judge did not err in refusing to allow the introduction of evidence as to the value of such property on a date prior to the institution of such proceedings.

In the instant case, the trial court found that *Roda* was applicable. The circuit court's order concluded that Ms. Newton owned the limestone under the land conveyed to Mr. Parsons. It was further determined that DOH did not obtain permission from Ms. Newton to remove the limestone. On this issue the circuit court's order found that "excavation, without permission of the owner of the mineral rights, may be tantamount to trespass and a violation of [Ms. Newton's] constitutional right." It also was determined that DOH removed the limestone before it filed a condemnation proceeding.

Under facts as found by the circuit court, we agree that the date of the take was the date that DOH filed the condemnation proceeding. We also disagree with DOH's characterization of this determination as a sanction. Determining the date of the take is not a sanction; it is a necessary determination in every condemnation proceeding. Moreover, *Roda* and its progeny have made it clear that "the State's commencement of appropriate legal proceedings is the date of the taking for the purpose of determining the fair market value of the real estate taken and damage to the residue for the fixing of compensation to be made to a condemnee[.]" *Edwin Miller Invs., L.L.C. v. CGP Dev. Co.*, 232 W. Va. 474, 478, 752 S.E.2d 901, 905 (2013). *See also West Virginia Dep't of Transp., Div. of Highways v.*

13

*Robertson*, 217 W. Va. 497, 503, 618 S.E.2d 506, 512 (2005) ("*Roda* stands for the proposition that whenever a determination of the value of property is made, that determination must be based upon the fair market value of the property when the condemnation application was filed."). We also do not believe that, for purposes of the date of the take, it is relevant as to whether DOH's conduct was in bad faith or an honest mistake. The controlling fact is that DOH did not seek to condemn the limestone it took until after the property was removed and used in helping to build the highway. Consequently, the second assignment of error is without merit.

### D. Finding the Hybrid Rule for Valuing Land Did Not Apply

The third issue raised by DOH, which also is written in an unnecessarily confusing manner, appears to be that the trial court committed error in determining, prior to trial, that the hybrid approach for valuing land set out in *West Virginia Department of Highways v. Berwind Land Co.*, 167 W. Va. 726, 280 S.E.2d 609 (1981), did not apply. This issue presents a question of law that we review *de novo*. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law . . . , we apply a *de novo* standard of review.").

The decision in *Berwind* involved a condemnation proceeding brought by DOH to obtain 56 acres of land in fee that contained a total mineral tract (coal) of 17 acres. The

14

jury valued the land and minerals at $58,500.00. The land owner appealed and argued that the trial court erred in not allowing it to prove the market value of the land by introducing evidence of the separate value of the coal underlying it. This Court rejected the argument and found that separate evidence of the value of the coal was actually introduced. In order to provide guidance for future cases involving the condemnation of an estate in fee, which contains purported valuable minerals or other elements such as trees, the following "hybrid" test was set out in Syllabus point 2 of *Berwind*:

> The owner of fee property taken by eminent domain may prove the market value of the land by introducing evidence of the separate value of the elements present in or on the land when it can be shown that (1) the existence and quantity of the element of value can be accurately determined, (2) other factors, such as the expense of production and marketing, were taken into consideration in arriving at the value sought to be introduced, (3) the element is clearly significant in value, and (4) the use of the property for purposes of exploiting that element of value is not inconsistent or incompatible with the highest and best use to which the property may be put or that the subservient use has been devalued to the degree it interferes with the highest and best use of the property taken. The jury should be instructed that the evidence of separate values is only a factor to be considered in determining the total market value of the land; to the extent such separate values are inconsistent with the highest and best use of the land they should be disregarded in arriving at the figure of just compensation.

In the instant proceeding, the circuit court determined that the *Berwind* hybrid rule did not apply. We agree with the trial court. *See Equitable Gas Co. v. Kincaid*, 168 W. Va. 646, 285 S.E.2d 421 (1981) (applying *Berwind* in a proceeding condemning land and

15

coal).

In this case, there was no need to value the land because DOH had purchased the surface from Mr. Parsons. The issue in this case was solely that of the value of the limestone owned by Ms. Newton.  Under *Roda*, a valuation of the limestone was independent of the previously purchased surface. As we noted in *Roda*, "[t]his case is distinguishable from the facts presented to us in *Berwind* in that it is similar to an action in willful trespass." *Roda*, 177 W. Va. at 388, 352 S.E.2d at 140.  Thus, the trial court properly found that *Berwind's* hybrid rule did not apply.

### E. Using a Time Frame to Show Marketability of Limestone

The fourth issue presented by DOH is that the trial court committed error in determining that Ms. Newton could use an eighteen-month time frame, after the date of the take, to show marketability for the limestone.  Specifically, the trial court held that Ms. Newton "may present evidence concerning uses of the limestone, markets and marketability of the limestone available during the period from April 29, 2011 through October 29, 2012." Ms. Newton argues, for the sole purpose of responding to the assignment of error, that the circuit court did not abuse its discretion in allowing a time frame of eighteen months to show

16

marketability.[15]  The issue presented requires this Court to decide whether the trial court abused its discretion in requiring Ms. Newton to introduce evidence of the marketability of limestone during an eighteen-month time frame.  *See* Syl. pt. 1, in part, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W. Va. 463, 475 S.E.2d 555 (1996) ("A trial court abuses its discretion when its rulings on discovery motions are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration.").

It is clear from our decision in *Roda* that even when minerals are taken without permission and prior to the filing of a condemnation petition, the parties still cannot introduce "evidence as to the value of such property on a date prior to the institution of such proceedings."  *Roda*, 177 W. Va. at 389, 352 S.E.2d at 140.  Nor does *Roda* require the mineral owner to show marketability of the minerals over a prospective time period after the date of the take.  *Roda* only requires the owner of property taken without permission show the value of the property on the date of the take.  Consistent with *Roda*, the circuit court's order in the instant proceeding made clear that "[t]he market price for the limestone minerals taken from the property . . . is . . . fixed as of April 29, 2011," which was the date of the take.

---

[15]One of Ms. Newton's cross-assignments of error is that it was improper for the circuit court to require her to establish marketability of the limestone because the decision in *Roda* did not require such a showing.  This cross-assignment of error was lodged by Ms. Newton for review if this Court reversed the judgment and ordered a new trial.

However, the circuit court's order went beyond *Roda* and also required Ms. Newton to establish a market for the limestone during an eighteen-month period from the date of the take. Clearly, such a requirement is not found in *Roda*.

DOH has set out arguments based upon evidence actually presented at trial and jury instructions given during the trial in order to show that the eighteen-month time frame for showing marketability was an abuse of discretion and prejudicial. The problem with DOH's reliance on evidence and jury instructions submitted at trial is that we are constrained from reviewing such matters. This appeal is limited to reviewing pretrial rulings, not evidence or jury instructions actually introduced or given at trial. It was incumbent upon DOH to file a post-trial motion for new trial in order for this Court to assess the prejudicial impact of the pretrial ruling on evidence introduced during the trial, as well as jury instructions. To do otherwise would make the general waiver under Rule 59(f) meaningless.

The circuit court's reasoning for requiring an eighteen-month time frame was set out in the order. The circuit court's order indicated that, because of "the quantity of limestone minerals excavated and removed from the property," Ms. Newton should "be allowed a market time frame window for the limestone minerals taken[.]" Although *Roda* does not support such a requirement, and we disapprove of the same under the facts of this case, we do not believe that this issue requires a new trial under our limited review. This is

because, and contrary to arguments by DOH, the trial court's order did not affect the valuation of the limestone on the date of the take. The order only required Ms. Newton to show that a market existed for the limestone during the eighteen-month period. Therefore, any error in the pretrial ruling was harmless. *See Parham v. Horace Mann Ins. Co.*, 200 W. Va. 609, 617, 490 S.E.2d 696, 704 (1997) ("[W]e conclude the procedural error committed by the trial court . . . [was] harmless, and decline to reverse the final decision of the trial court."); *Danser v. Dorr*, 72 W. Va. 430, 432, 78 S.E. 367, 367 (1913) ("This court will not reverse for harmless error." (citations omitted)).

### F. Allowing Evidence of DOH's Testing and Use of the Limestone to Show the Limestone Had Commercial Quality

The fifth issue presented by DOH is that the trial court committed error in ruling before trial that Ms. Newton could introduce evidence of DOH's use and testing of the limestone to show its quality. A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *See McDougal v. McCammon*, 193 W. Va. 229, 235, 455 S.E.2d 788, 794 (1995) ("Rulings on the admissibility of evidence . . . are committed to the discretion of the trial court.").

> In a pretrial order, the circuit court ruled that Ms. Newton could
>
> demonstrate the use of the limestone excavated from the property to provide quality, including the requirements of testing parameters established by the limestone industry and the

19

American Association of State Highway and Transportation Officials which require limestone products to meet the standard specifications criteria of governmental departments in charge of the regulatory oversight of construction projects such as Corridor H, a federally funded highway.

According to DOH, this ruling permitted the introduction of immaterial and irrelevant evidence, created confusing and inconsistent instructions, and undermined other rulings concerning the market.

DOH's objections to this pretrial ruling are not reviewable in this appeal, because they would involve an examination of trial testimony and other evidence. For example, in order to determine whether the evidence was irrelevant, we would have to review it in the context of actual evidence introduced during the trial–not in the hypothetical abstract. As stated earlier, DOH has locked itself out of a full review because it chose not to file a post-trial motion for new trial.[16] Thus, under our limited review, we find no error in the pretrial ruling.

---

[16]The federal cases cited without discussion by DOH have no application to this assignment of error. *See United States v. Cors*, 337 U.S. 325, 332, 69 S. Ct. 1086, 93 L. Ed. 1392 (1949) (case involved an attempt to recover money for government's requisition of a steam tug boat, not the use of government standards for testing the quality of limestone); *St. Genevieve Gas Co. v. Tennessee Valley Auth.*, 747 F.2d 1411 (11th Cir. 1984) (case involved condemnation of mineral leases, not the use of government standards for testing the quality of limestone); *United States v. Weyerhaeuser Co.*, 538 F.2d 1363 (9th Cir. 1976) (case involved condemnation of a road for hauling timber, not the use of government standards for testing the quality of limestone); *United States v. Whitehurst*, 337 F.2d 765 (4th Cir. 1964) (case involved the valuation of land in fee, not the use of government standards for testing the quality of limestone).

## G. Introduction of Evidence Related to Limestone
### Excavated by DOH from Other Properties

The sixth issue raised by DOH concerns the trial court's denial of its pretrial motion to exclude evidence involved with limestone it excavated from properties unrelated to Ms. Newton's property. As we previously mentioned, we review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Lively v. Rufus*, 207 W. Va. 436, 443, 533 S.E.2d 662, 669 (2000) ("[R]ulings on the admission of evidence . . . are committed to the discretion of the trial court." (internal quotations and citation omitted)).

The record indicates that, in denying DOH's motion to exclude evidence involved with other excavated limestone, the trial court asked both parties to submit a limiting instruction that would eventually be given to the jury. DOH declined to tender an instruction, but Ms. Newton did provide the same. The limiting instruction offered by Ms. Newton stated the following:

> During the presentation of these proceedings before you, the Court has allowed reference to limestone volumes and procedures by the WVDOH and its contractors involving limestone deposits and the excavation thereof on property other than the property of the Respondent. You are directed to consider matters of limestone and procedures by the WVDOH on properties other than the Respondent solely for the purposes of demonstrating documentation, processes and procedures by the WVDOH and for purposes of demonstrating methodology and accuracy of calculations made by the experts who have generated reports and provided testimony before you. Your calculations of volume and valuation of limestone in this action is limited solely to the 6.714 acre construction area on the

property of the Respondent.

DOH contends that the limiting instruction did not cure the problems associated with the evidence. According to DOH, the evidence was irrelevant, immaterial, and unfairly prejudicial. As with the previous assignment of error, we cannot reach the merits of DOH's argument because to do so requires this Court to review the objected to evidence in the context of all evidence admitted at trial. In Syllabus point 7 of *Torrence v. Kusminsky*, 185 W. Va. 734, 408 S.E.2d 684 (1991), we explained that "[a] judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby.' Syllabus Point 7, *Starcher v. South Penn Oil Co.*, 81 W. Va. 587, 95 S.E. 28 (1918)." In other words, even if we assumed the trial court should have granted DOH's pretrial motion to exclude the evidence, we still would have to assess the prejudicial impact of that evidence. Determining prejudicial impact cannot be divorced from a review of the trial testimony and other evidence. DOH has chosen to limit our ability to review the trial record because it failed to file a motion for new trial. Consequently, this assignment of error is not grounds for reversing the judgment in this case.

### H. Instructions Given to the Jury Before Evidence Was Presented

The seventh issue raised by DOH concerns a pretrial ruling by the trial court to instruct the jury on five issues that had to be accepted as established. As a general matter, we review for an abuse of discretion instructions given by the trial court to a jury. *See* Syl. pt. 4, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) ("Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.").

Prior to trial, Ms. Newton filed her second motion for partial summary judgment. In that motion, Ms. Newton asked the court to rule as a matter of law that the following five statements of fact could be read to the jury before evidence was taken in the case:

> 1. Paul Williams and Margaret Z. Williams, now Newton, conveyed the surface only to James Parsons on June 4, 1980, reserving unto themselves fee simple ownership of all minerals underlying the Parsons real estate, without limitation or restriction, and which reservation and exception is free of ambiguity and clear in its intent.
>
> 2. The minerals reserved by Margaret Z. Newton include limestone and gravel as defined by the Court.
>
> 3. The WVDOH entered onto the Parsons real estate and excavated and appropriated the limestone minerals of Newton without permission of the Respondent.

4. The WVDOH made no communication or contact with Margaret Z. Newton prior to entering onto the property or prior to appropriating the limestone minerals from the Newton reserves.

5. The failure of the WVDOH to communicate with the Respondent precluded an opportunity to assess the value of the limestone minerals prior to appropriation of the minerals by the WVDOH.

These statements of fact were asked to be read to the jury so as to save judicial resources in proving facts that in Ms. Newton's belief could not be controverted. The trial court agreed with Ms. Newton and granted her partial summary judgment on this issue. In its brief before this Court, DOH concedes that it "stipulated to item nos. 1 and 2."

DOH argues that it was prejudiced by instructions 3, 4, and 5, and that those instructions were in conflict with other instructions given to the jury. Assuming that it was error to give these instructions, as previously stated, we cannot determine the prejudicial effect the instructions had on the outcome of the case without reviewing the trial evidence. We are precluded from reviewing such evidence. Thus, this assignment of error is not grounds for a new trial.

*I. Excluding Evidence of the Percentage of Recovery Yields of the Limestone*

The eighth assignment of error by DOH is that the trial court committed error in ruling prior to trial that it could not present evidence of yield and recovery rates for the limestone. We review this issue for abuse of discretion. *See State v. Bowling*, 232 W. Va. 529, 540, 753 S.E.2d 27, 38 (2013) ("We review a circuit court's decision to exclude evidence for an abuse of discretion.").

Ms. Newton filed a motion in limine before trial seeking to preclude DOH from presenting any evidence of percentage yields information, on the grounds that such evidence involved production costs, which were precluded from evidence. The trial court agreed with Ms. Newton and entered an order stating the following:

> The removal of overburden and other materials in the recovery of limestone is not an issue in this action under *Roda*. The Court has previously found . . . that compensation for the underlying minerals excavated by the Petitioners is in accordance with [*Roda*], in that the compensation for the underlying minerals is the fair market value of the limestone which was removed and used before April 29, 2011, or in its present uncovered state on that date, ready for loading, with no consideration of the production, mining or excavation costs. Therefore, the percentage recovery yields of the limestone noted by the experts of [DOH] is irrelevant, immaterial, and shall be stricken from the reports and not presented as evidence.

We find the trial court's ruling to be consistent with *Roda*.

As we previously noted, in *Roda* a contractor for DOH improperly removed

25

and sold coal from property prior to DOH filing a condemnation petition to obtain the property. In its appeal from the jury verdict in favor of the property owners, DOH argued that the trial court improperly "limited consideration of the coal to its condition as uncovered or removed, thereby omitting certain costs, such as production and marketing, in ascertaining the fair market value of the coal." *Roda*, 177 W. Va. at 388, 352 S.E.2d at 139-40. DOH took the position in *Roda* that the holding in *Berwind* required such evidence to be considered. *Berwind* indicated that factors to be considered in valuing minerals included the expense of production and marketing. We rejected the application of *Berwind* in *Roda* and held as follows:

> When a condemnor had prior knowledge that its contractor was selling a condemnee's coal which had been severed from the land before the institution of lawful condemnation proceedings, the fair market value of the condemnee's coal, removed before the lawful date of take, is the price for which the coal could be sold, ready for loading, by a person desirous of selling to a person wishing to buy, both freely exercising prudence and intelligent judgment as to its value, without consideration of the mining, production, excavation and marketing costs.

Syl. pt. 3, *Roda*, 177 W. Va. 383, 352 S.E.2d 134.

Under the facts of the instant case, the circuit court was correct in finding *Roda* would not permit the valuation of the limestone on the date of the take to be offset by evidence of yield and recovery rates for the limestone. As in *Roda*, when DOH decides to take property "without exercising its powers of eminent domain in the manner prescribed by

26

law, it cannot be heard to complain that the rules applicable to ordinary condemnation proceedings were not applied to the instant action which it forced upon respondent [condemnee]." *Roda*, 177 W. Va. at 389, 352 S.E.2d at 141 (internal quotations and citation omitted). Thus, we find no error in the pretrial ruling excluding evidence of yield and recovery rates for the limestone.[17]

### J. Denying Motion for Judgment as a Matter of Law

The last assignment of error by DOH is that the trial court erred in denying its motion for judgment as a matter of law. We review the denial of a motion for judgment as a matter of law *de novo*. *See* Syl. pt. 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009) ("The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) . . . is *de novo*.").

---

[17]We must point out that DOH could have avoided the instant litigation if it simply would have followed our decision in *State by Department of Natural Resources v. Cooper*, 152 W. Va. 309, 162 S.E.2d 281 (1968). In *Cooper*, we held the following in Syllabus point 1:

> Where the State of West Virginia, or any entity with statutory authority to take property for public use, undertakes to acquire the fee simple title to a parcel of land all persons who own an interest or an estate in such parcel must be joined as party defendants in the proceeding.

*Id.* Under *Cooper*, DOH should have filed a condemnation proceeding jointly against Mr. Parsons and Ms. Newton (and her then existing spouse). DOH's decision to ignore the rights of the mineral owner in this case, Ms. Newton, has resulted in costs that easily could have been avoided.

27

DOH's brief indicates that it moved the court for judgment as a matter of law at the close of Ms. Newton's case-in-chief and at the end of its case-in-chief. The circuit court denied both motions. DOH now asks this Court to reverse the judgment and grant it judgment as a matter of law. Ms. Newton contends that this issue was not preserved for appellate review. We agree.[18]

We begin by looking at additional text in Rule 59(f). The additional relevant text of Rule 59(f) states:

> [I]f a party has made a motion under Rule 50(b) for judgment in accordance with the party's motion for judgment as a matter of law and such motion is denied, the party's failure to move for a new trial is not a waiver of error in the court's denying or failing to grant such motion for judgment as a matter of law.

Under Rule 59(f), if a party makes a proper motion for judgment as a matter of law under Rule 50(b), a party's failure to file a post-trial motion for new trial will not constitute waiver of the Rule 50(b) issue. The import of Rule 59(f) is that to preserve for appeal the issue of

---

[18]Our agreement with Ms. Newton is for reasons different than those cited by her. Ms. Newton contends that DOH did not make a motion for judgment as a matter of law after the close of all the evidence, but before the case was submitted to the jury. The trial court's judgment order indicated that DOH did, in fact, renew its motion for judgment as a matter of law prior to the case being sent to the jury. During oral arguments, counsel for Ms. Newton indicated that he drafted the judgment order and that he made a mistake in asserting that DOH renewed the motion. This alleged drafting error is of no moment to us. "It is a paramount principle of jurisprudence that a court speaks only through its orders." *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006). Consequently, "we are left to decide this [issue] within the parameters of the circuit court's order." *State v. White*, 188 W. Va. 534, 536 n.2, 425 S.E.2d 210, 212 n.2 (1992).

a trial court's denial of a motion for judgment as a matter of law, a party must file a post-trial

motion for judgment as a matter of law under Rule 50(b).  The relevant text of Rule 50(b)

provides:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew the request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment and may alternatively request a new trial or join a motion for a new trial under Rule 59.

Even though Rule 50(b) provides that a party "may" renew the motion, this

does not impact what consequence flows from a failure to renew the motion.  The following

observations have been made regarding the failure of a party to renew a motion for judgment

as a matter of law under Rule 50(b):

> A party's failure to file a post-verdict motion under Rule 50(b) precludes an appellate court from entering a judgment contrary to that which was entered by the trial court. . . .  A post-verdict motion is necessary because determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the trial judge who saw and heard the witnesses, and has the feel of the case which no appellate printed transcript can impart.

Cleckley, Davis, and Palmer, *Litigation Handbook*, § 50(b), at 1116-17.  The federal

counterpart to Rule 50(b) also uses the term "may," and federal courts also have interpreted

their rule as precluding appellate review of a sufficiency of the evidence claim if a party fails

29

to file a post-verdict motion for judgment as a matter of law.[19]  In *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 407, 126 S. Ct. 980, 989, 163 L. Ed. 2d 974 (2006), the United States Supreme Court expressly held "that since respondent failed to renew its preverdict motion as specified in Rule 50(b), there was no basis for review of respondent's sufficiency of the evidence challenge."[20]  The decision in *Unitherm* was applied in *First United Pentecostal Church v. Guideone Specialty Mutual Insurance Co.*, 189 F. App'x 852 (11th Cir. 2006).

---

[19]The relevant text of federal Rule 50(b) provides as follows:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment – or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged – the *movant may file a renewed motion* for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

(Emphasis added).

[20]We often look to federal decisions for guidance when our rules are similar in wording.  *See State ex rel. Paige v. Canady*, 197 W. Va. 154, 160, 475 S.E.2d 154, 160 (1996) ("Because the language contained in Rule 26(c) of the West Virginia Rules of Civil Procedure is nearly identical to Rule 26(c) as contained in the Federal Rules of Civil Procedure, we look to federal case law for guidance."); *State v. Tanner*, 175 W. Va. 264, 266, 332 S.E.2d 277, 279 (1985) ("This Rule is patterned after Rule 26.2 of the Federal Rules of Criminal Procedure, and in applying it the Court has looked to Federal precedents for guidance.").

In *First United,* the plaintiff brought a breach of contract and bad faith action against the defendant insurer. During the trial, before a jury, the defendant properly moved the court for judgment as a matter of law. However, after the jury returned a verdict in favor of the plaintiff, the defendant filed an appeal without filing any post-trial motions. The Eleventh Circuit found that, under *Unitherm*, it could not review the defendant's claim that it should have been granted judgment as a matter of law:

> After carefully reviewing the record, we conclude that GuideOne made a Motion for Judgment as a Matter of Law pre-verdict, pursuant to [Rule] 50(a); however, it failed to renew its motion postverdict or file a motion for new trial pursuant to Rule 50(b). Because GuideOne failed to renew its motion or file a post-trial motion for new trial, we are precluded from entering judgment as matter of law in GuideOne's favor or granting it a new trial based on the sufficiency of the evidence.

*First United*, 189 F. App'x at 855-56 (citations omitted). *See Climent-Garcia v. Autoridad de Transporte Maritimo y Las Islas Municipio*, 754 F.3d 17, 20 (1st Cir. 2014) ("Despite having twice filed for judgment as a matter of law during trial, the MTA failed to renew this motion post-verdict. That failure leaves the MTA's claim dead in the water, for an appellate court cannot review the denial of a Rule 50(a) motion based on the sufficiency of the evidence when the party appealing the verdict failed to renew its sufficiency challenge in the district court pursuant to Rule 50(b)."); *New York Marine & Gen. Ins. Co. v. Cont'l Cement Co., LLC*, 761 F.3d 830, 840 (8th Cir. 2014) ("A party cannot challenge the sufficiency of the evidence if it failed to file a postverdict motion under Rule 50(b) after the district court denied its Rule 50(a) motion."); *Pryce v. Bd. of Educ. of Prince George's Cnty.*, 422

31

F. App'x 229, 229 (4th Cir. 2011) ("As Pryce failed to file a post-verdict motion pursuant to [Rule] 50, and failed to move for a new trial pursuant to [Rule] 59, however, this court is without power to review his claim regarding the sufficiency of the evidence."); *Sykes v. Pub. Storage Inc.*, 425 F. App'x 359, 363 (5th Cir. 2011) ("Sykes properly filed a Rule 50(a) motion before the case was submitted to the jury, but he failed to preserve his challenge to the sufficiency of the evidence supporting the jury verdict on his contract claim by making a post-verdict Rule 50(b) motion for judgment as a matter of law or a motion for a new trial."); *Williams v. Gonterman*, 313 F. App'x 144, 145 (10th Cir. 2009) ("The Supreme Court has made clear that a party's failure to comply with Rule 50(b) forecloses its challenge to the sufficiency of the evidence."); *Downey v. Strain*, 510 F.3d 534, 543 (5th Cir. 2007) ("[A] Rule 50(b) motion is necessary to preserve an argument for appellate review even when a Rule 50(a) motion was denied after all the evidence was presented.").

Consequently, we now hold that a party's failure to file a post-verdict motion for judgment as a matter of law under Rule 50(b) of the West Virginia Rules of Civil Procedure precludes this Court from reviewing an insufficiency of the evidence claim.

In the instant case, DOH argues that Ms. Newton's evidence was insufficient with respect to showing marketability of the limestone; therefore, DOH claims, it was entitled to judgment as a matter of law. Under our holding, we cannot reach the issue of the

32

sufficiency of the evidence because DOH failed to file a post-verdict motion for judgment as a matter of law as required under Rule 50(b).[21]

# IV.

## CONCLUSION

The circuit court's order of judgment entered on April 16, 2014, is affirmed.

Affirmed.

---

[21]As previously mentioned in this opinion, Ms. Newton filed a cross-appeal. The cross-appeal set out two issues. First, Ms. Newton argued that the trial court committed error in requiring her to show marketability of the limestone. This issue is now moot because we have denied DOH a new trial. The second issue involves Ms. Newton's request for attorney's fees. We decline to address this issue because the record indicates the matter is pending before the circuit court.