# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

————————

No. 12-1137

————————

**FILED**

**November 14, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**EDWIN MILLER INVESTMENTS, L.L.C.,**
Respondent Below, Petitioner

v.

**CGP DEVELOPMENT CO., INC., AND JACK C. BARR,**
Respondents Below, Respondents

_____

**Appeal from the Circuit Court of Berkeley County**
**The Honorable John C. Yoder, Judge**
**Civil Action No. 10-C-689**

**AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED**
_____

**Submitted: October 15, 2013**
**Filed: November 14, 2013**

Michael J. Novotny, Esq.
Harpers Ferry, West Virginia
Counsel for the Petitioner

Jack C. Barr, Esq.
Law Office of Jack C. Barr
Keyser, West Virginia

Wm. Richard McCune, Jr., Esq.
Alex A. Tsiatsos, Esq.
Wm. Richard McCune, Jr., PLLC
Martinsburg, West Virginia
Counsel for the Respondents

**The Opinion of the Court was delivered PER CURIAM.**

**SYLLABUS BY THE COURT**

1.      "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "In eminent domain proceedings, the date of take for the purpose of determining the fair market value of property for the fixing of compensation to be made to the condemnee is the date on which the property is lawfully taken by the commencement of appropriate legal proceedings pursuant to *W.Va. Code*, 54-2-14a, as amended." Syl. pt. 1, *West Virginia Dep't. of Highways v. Roda*, 177 W. Va. 383, 352 S.E.2d 134 (1986).

3.      "The primary consideration in the construction of a contract is the intention of the parties. This intention must be gathered from an examination of the whole instrument, which should be so construed, if possible, as to give meaning to every word, phrase and clause and also render all its provisions consistent and harmonious." Syl., *Henderson Dev. Co. v. United Fuel*, 121 W. Va. 284, 3 S.E.2d 217 (1939).

**Per Curiam:**

In this case, Petitioner Edwin Miller Investments, LLC (hereinafter "EMI") appeals the August 20, 2012, order of the Circuit Court of Berkeley County that ruled that Respondent CGP Development Co., Inc. ("CGP") is entitled to all of the condemnation proceeds of land formerly owned by EMI and dismissed EMI from the condemnation proceeding below. After careful consideration of the parties' arguments, the relevant portions of the appendix, and the applicable law, we affirm the circuit court's finding that CGP is entitled to all sums awarded for damage to the four-acre residue purchased by CGP. However, we reverse the circuit court's finding that CGP is entitled to any additional sums resulting from the condemnation of the eight-acre tract.[1]

## I.

## FACTS

This case involves an approximately 12-acre tract of real estate located in Martinsburg which formerly was owned by EMI. EMI, when it was the owner of the real estate, used it to secure a $335,000.00 loan from BCBank, Inc. ("BCBank").

In August 2010, the State of West Virginia filed an action seeking to condemn 8 of the 12 acres. The condemnation action was filed pursuant to W. Va. Code § 54-2-14a (1981), which provides an alternative method for condemnation of real estate.

---

[1] Also listed as a respondent in this case is Jack C. Barr who was the successor trustee of the deed of trust that secured EMI's loan.

On September 16, 2010, BCBank assigned the note, deed of trust and other loan documents regarding EMI's loan to the respondent herein, CGP. Pursuant to the provisions of W. Va. Code § 54-2-14a, the State became the legal owner of EMI's eight acres on September 27, 2010, when it paid $241,000.00 into court. This sum was estimated by the State to be the fair market value of the eight acres and for any damages to the approximately four-acre residue of the real estate.[2]

At about this time, EMI defaulted on its loan obligations to CGP. As a result, a foreclosure sale of the remaining 4-acre residue was conducted. CGP purchased the 4 acres at a foreclosure sale for $96,713.48, which sum was applied to the balance of EMI's loan. The foreclosure deed received by CGP expressly reserved from the foreclosure sale rights to the condemnation proceeds paid into court by the State under the theory of equitable conversion.

In March 2011, the circuit court heard EMI's and CGP's arguments concerning various lien issues and entitlement to the condemnation proceeds paid into court by the State. The circuit court found that CGP was the priority lienholder with respect to the condemned property and accordingly ordered release of the $241,000.00 paid into court to CGP in partial satisfaction of CGP's lien. Both EMI and CGP agree that the total money paid into court by the State is insufficient to constitute the fair

---

[2] The circuit court found that the State's taking of the eight acres may have left the remaining four acres effectively landlocked, thus either greatly reducing the value of those four acres or turning them into an uneconomic remnant.

market value of the eight acres and any damage to the four-acre residue. However, the parties disagree as to which party is entitled to any additional proceeds paid as damages to the four-acre residue as well as any additional sums resulting from the condemnation of the eight acres.

In the order appealed from in this case, the circuit court made four findings, two of which are challenged by EMI in this appeal. First, the circuit court found that CGP has a right to be paid out of any additional condemnation proceeds an amount equal to the outstanding principal balance and interest owed by EMI.[3] Second, the circuit court found that CGP is entitled to be paid out of any additional condemnation proceeds an amount equal to EMI's other debts to CGP which are secured under the deed of trust. Third, the circuit court found that CGP, as the owner of the four-acre residue, is alone entitled to all damages which may accrue as a result of damage to the residue. Finally, the circuit court found that CGP is entitled to any additional proceeds obtained in the condemnation proceeding pursuant to language in the deed of trust held by CGP. Based on these findings, the circuit court concluded that EMI has no further interest in the real estate, the condemnation proceeding, or any condemnation proceeds paid by the State, and the court dismissed EMI from the case with prejudice.

---

[3] The circuit court found that after the application to EMI's debt to CGP of the $241,000.00 paid by the State for the eight acres and any damage to the residue, and the $96,713.48 paid by CGP at the foreclosure sale, the total still owed by EMI at the time the order was entered was $24,901.59 and an additional $4.31 per day from June 27, 2012 until paid.

3

In this appeal, EMI does not dispute that CGP as priority lienholder is entitled to the payment of the principal and interest due on the note owed by EMI. EMI also agrees that CGP is entitled to the payment of any other debts validly secured by the deed of trust from the condemnation proceeds. However, EMI challenges the circuit court's determination that CGP is entitled to any further proceeds paid for damages to the four-acre residue purchased by CGP and any additional sums awarded for the 8 acres condemned.

## II.

## STANDARD OF REVIEW

This is an appeal of the circuit court's order which granted CGP's motion for entitlement to condemnation proceeds. EMI contends that this Court should review the circuit court's order either as an order granting a motion filed pursuant to Rule 12(c) of the West Virginia Rules of Civil Procedure or an order granting summary judgment.[4] According to Rule of Civil Procedure 12(c), in part, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." *See also Gunn v. Hope Gas, Inc.*, 184 W. Va. 600, 603, 402 S.E.2d 505, 508 (1991) (indicating that "the court's consideration of documents which supported the pleadings converted the defendant's Rule 12(c) motion into a Rule 56 motion for summary judgment"). In the instant case, the

---

[4] Neither the motion filed by CGP nor the circuit court's order granting the motion identifies under which rule of civil procedure the motion was made or granted.

4

circuit court considered documents outside of the pleadings in granting CGP's motion. As a result, we will treat the circuit court's order as a summary judgment order. This Court previously has held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

## III.

## ANALYSIS

### A. *The Operation of W. Va. Code § 54-2-14a*

In this case, the State condemned eight acres of the 12-acre tract originally owned by EMI pursuant to W. Va. Code § 54-2-14a (1981). Prior to considering the specific issues herein, we will first discuss the general operation of this statute.

Under W. Va. Code § 54-2-14a, once the State seeks to condemn real estate, and the circuit court finds that the purpose of the condemnation is for a public use, the State shall, prior to entry onto the land, pay into court such sum as the State estimates to be the fair value of the property plus damages, if any, to the residue. The circuit court shall then issue an order vesting a defeasible title in the State to the real estate sought to be condemned and permitting the State's immediate possession of and entry upon the real estate. The owners of the real estate at the time the State pays the sum into court, including lienholders and conflicting claimants, have the same title to the proceeds paid into court as they had to the real estate, and all liens by deed of trust, judgment or otherwise, upon the real estate are transferred to the proceeds paid to the court.

5

If the State and the owner of the real estate cannot agree on the fair market value of the real estate and any damage to the residue, the value is determined by condemnation commissioners or a jury. The commissioners' report or the jury's verdict is then confirmed and ordered to be recorded. If the amount determined exceeds the amount originally paid into court by the State, the State has three months to pay into court the excess amount together with the statutorily prescribed interest from the date of the filing of the condemnation petition to the date of payment into court of the excess amount. Only after the commissioners' report or jury's verdict has been confirmed and ordered to be recorded, and the State pays into court the excess amount, if any, is title to the condemned real estate absolutely and indefeasibly vested in the State in fee simple.

In the instant case, at the time that CGP purchased the four-acre residue, the State had paid into court the estimated fair market value of the eight acres including any damages to the four-acre residue and had taken possession of the property. However, the fair market value of the real estate had not yet been determined by condemnation commissioners or a jury.

### B. EMI's First Assignment of Error

There are two assignments of error in this case. In the first assignment of error, EMI asserts that the circuit court erred in determining that CGP, as the foreclosure purchaser of the four-acre residue, is entitled to all condemnation proceeds to be awarded for damages to the residue. First, EMI asserts that residue damages are determined as of

6

the date of the taking and belong to EMI as the owner of the property on that date. EMI characterizes the date of the taking as the date that the State deposited into court the estimated fair value of the condemned property including damages, if any, to the residue, and took possession of the real estate.

In Syllabus Point 1 of *West Virginia Department of Highways v. Roda*, 177 W. Va. 383, 352 S.E.2d 134 (1986), this Court held:

> In eminent domain proceedings, the date of take for the purpose of determining the fair market value of property for the fixing of compensation to be made to the condemnee is the date on which the property is lawfully taken by the commencement of appropriate legal proceedings pursuant to *W. Va. Code*, 54-2-14a, as amended.

EMI was the owner of the 12 acres on the date that the State commenced the condemnation proceedings. However, while the State's commencement of appropriate legal proceedings is the date of the taking for the purpose of determining the fair market value of the real estate taken and damage to the residue for the fixing of compensation to be made to a condemnee, it is not the date for determining who is entitled to the fair market value of the condemned real estate. This fact was made clear by this Court in *Depart,emt of Transportation v. Robertson*, 217 W. Va. 497, 503, 618 S.E.2d 506, 512 (2005), where we explained:

> The decision in *Roda* was not concerned with, nor did it address the issue of, the extent of a landowner's interest in property on the date of the take. *Roda* stands for the proposition that whenever a determination of the value of property is made, that determination must be based upon the fair market value of the property when the condemnation

7

application was filed. Neither *Roda* nor the provisions in W. Va. Code § 54-2-14a address the issue of the extent of a landowner's property on the date of the take.

Therefore, our holding in *Roda* does not answer the question of which party is entitled to the condemnation proceeds in this case.

It has been said that "[i]n general, where property is conveyed after the commencement of a condemnation proceeding but before the time when the taking is complete, the purchaser is entitled to the compensation, unless the compensation is expressly reserved to the grantor." 29A C.J.S. *Eminent Domain* § 244 (2007) (footnotes omitted). While this Court declines to adopt this rule as applicable in all circumstances, we believe that it is the appropriate rule to apply to the instant facts.

This Court's review of the record indicates that the State commenced the condemnation proceeds in August 2010, and EMI defaulted on its loan very shortly thereafter. Clearly, at the time CGP purchased the four-acre residue in November 2010, the condemnation proceedings had just commenced and were not near completion. Specifically, the fair market value of the eight acres and any damages to the four-acre residue had not yet been determined, any additional amount that may be awarded had not been paid by the State into court, and the State had not received absolute and indefeasible title in fee simple to the real estate. As a result, at the time CGP purchased the four-acre residue, the taking of the eight acres and any damages to the residue were not complete for the purpose of determining entitlement to the condemnation proceeds.

8

EMI asserts, however, that the foreclosure deed conveying the four-acre residue to CGP did not transfer any right in the damage of the residue to CPG. In support of this argument, EMI points to language in the foreclosure deed which EMI says excludes the transfer of any condemnation rights.[5] The foreclosure deed conveys the 12 acres of the real estate which secured EMI's loan from CGP

> [s]ubject to and less the real estate and interest in real estate described in the condemnation proceedings instituted in Berkeley County West Virginia (Civil Action Nos. 10-C-689 VI, 10-C-690 VI, 10-C-691 VI). Successor Trustee reserves from said sale the portions of real estate which are subject to such condemnation proceedings and the liens upon the deposit by the state and/or the proceeds from the real estate which have now been equitably converted by said proceedings.

According to EMI, this language clearly reserves from the conveyance of the four-acre residue to CGP all proceeds for damages to the residue.

The circuit court below rejected EMI's argument, reasoning as follows:

> EMI also claims that the foreclosure sale reserved "the portions of the real estate which are subject to such condemnation proceedings." That is correct, but the reservation does not accomplish what EMI alleges. The foreclosure deed refers to the specific case numbers involving specific parcels condemned and the deposits into which the parcels had been equitably converted. Specifically, those parcels were equitably converted in the $241,000.00 paid into Court by the State. That money was reserved from the sale because it belonged to CGP, as this Court subsequently agreed. The reservation was in place to prevent a buyer at the foreclosure sale from buying a right to the proceeds which belonged to CGP. Nothing in the deed mentions any

---

[5] This exact language also appears in the "Notice of Successor Trustee's Sale."

> reservation in EMI for rights to residual damages or diminution to the residue. Therefore, CGP as fee owner of the residue has exclusive rights to raise claims for damage to the residue.

(Footnote omitted). We find that the circuit court's construction of the reservation in the trust deed is correct.

Reading the reservation provision as a whole, it is clear that its purpose is to reserve from a purchaser of the foreclosed property the eight acres condemned by the State and any liens on the money deposited into court by the State as an estimation of the fair market value of the real estate. Significantly, the language nowhere refers to EMI's interest in the real estate or damages to the four-acre residue. Therefore, this Court finds no merit to EMI's argument. Accordingly, this Court finds that CGP, as the foreclosure purchaser of the four-acre residue, is entitled to all of the proceeds to be awarded for any damages to the four-acre residue, and we affirm the circuit court's order to the extent that it so ruled.

### C. EMI's Second Assignment of Error

The circuit court also ruled in its August 20, 2012, order that CGP has a right to any additional sums resulting from the condemnation proceedings presumably referring to any additional proceeds paid by the State as the fair market value of the condemned eight-acre tract. The circuit court based its ruling on the following provision in the deed of trust that secured EMI's loan from CGP:

10

**CONDEMNATION.** Grantor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Grantor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. **Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property.** Such proceeds shall be considered payments and will be applied as provided in this Deed of Trust. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

(Emphasis added). The circuit court found that the language emphasized above is unambiguous and that with this language EMI agreed to give CGP "all sums" and to assign to CGP "any award" resulting from condemnation, not just the sums which will satisfy EMI's indebtedness.

In its second assignment of error, EMI avers that the circuit court erred in finding that this provision assigned all sums to CGP including those in excess of EMI's indebtedness to CGP. According to EMI, the circuit court failed to read this provision in accord with the entire deed of trust. EMI asserts that the deed of trust is not an unlimited assignment of property rights. Instead, it is a limited collateral assignment of real estate and condemnation rights for the sole purpose of securing the payment of EMI's debt.

11

We agree with EMI's argument. This Court has held:

> The primary consideration in the construction of a contract is the intention of the parties. This intention must be gathered from an examination of the whole instrument, which should be so construed, if possible, as to give meaning to every word, phrase and clause and also render all its provisions consistent and harmonious.

Syl., *Henderson Dev. Co. v. United Fuel*, 121 W. Va. 284, 3 S.E.2d 217 (1939). The provision at issue is included in a deed of trust which is defined as "[a] deed conveying title to real property to a trustee as security until the grantor repays a loan." *Black's Law Dictionary* 476 (9th ed. 2009). The purpose of the deed of trust in this case was to secure EMI's loan from CGP; it was not an unlimited assignment of property rights. The provision at issue clearly indicates that the proceeds of any award or claim for damages connected with the condemnation proceedings are to be considered payments and will be applied as provided in the deed of trust. In addition, paragraph 18 of the deed of trust indicates that "[o]nce the Secured Debt is fully and finally paid, Lender agrees to release this Deed of Trust." Thus, when we read the provision at issue in light of the purpose of the deed of trust and in accord with its other terms, we conclude that this provision assigns to CGP only those condemnation proceeds awarded for the eight acres taken which are necessary to pay off the remaining debt owed by EMI to CGP. Accordingly, we find that the circuit court erred in finding that CGP is entitled to any additional sums resulting from the condemnation of the eight-acre tract.

Finally, because the circuit court erred in finding that CGP is entitled to all additional condemnation proceeds of the eight acres taken, we also find error in the circuit court's dismissal with prejudice of EMI from the condemnation proceedings.

## IV.

## CONCLUSION

For the reasons set forth above, this Court affirms the ruling of the Circuit Court of Berkeley County in its August 20, 2012, order that CGP, as the owner of the four-acre residue, is entitled to all of the condemnation proceeds for damages to the four-acre residue resulting from the State's taking of the eight-acre tract. However, this Court reverses the circuit court's ruling in its August 20, 2012, order that CGP is entitled to any additional condemnation proceeds from the State's condemnation of the eight-acre tract, and the circuit court's dismissal with prejudice of EMI from the condemnation proceedings below. Finally, we remand this case to the Circuit Court of Berkeley County for proceedings consistent with this opinion. Accordingly, the August 20, 2012, order of the Circuit Court of Berkeley County is affirmed, in part; reversed, in part; and remanded.

Affirmed, in part; reversed, in part; and remanded.