IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 19-1065

_____

FILED
**March 15, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ORANGE SCHERICH, MARGARET SCHERICH,
THOMAS SCHERICH, and BERTHA SCHERICH,
Petitioners,

v.

WHEELING CREEK WATERSHED PROTECTION AND
FLOOD PREVENTION COMMISSION,
Respondent.

_____

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 90-C-229M

REVERSED AND REMANDED
WITH INSTRUCTIONS

_____

Submitted: January 26, 2021
Filed: March 15, 2021

Webster J. Arceneaux, III, Esq.
James C. Stebbins, Esq.
Ramonda C. Marling, Esq.
James M. Becker, Esq.
Lewis Glasser PLLC
Charleston, West Virginia

David C. Hook, Esq.
Hook & Hook
Counsel for Petitioners

Christian E. Turak, Esq.
Gold, Khourey & Turak, L.C.
Moundsville, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "In a condemnation proceeding, the circuit court is charged with determining whether the applicant has a lawful right to take property for the purposes stated in the condemnation petition. The circuit court determines, as a matter of law, whether a property may lawfully be taken. The property may lawfully be taken if the applicant's expressed use of the property is, in fact, a public one, and the condemnation is not impelled by bad faith or arbitrary and capricious motives."  Syllabus Point 1, *Gomez v. Kanawha County Commission*, 237 W. Va. 451, 787 S.E.2d 904 (2016).

2.      West Virginia Code § 54-2-14a (1981) places the burden of ensuring a condemnation action reaches its conclusion upon the condemning authority.

3.      A person entitled to proceeds of a condemnation proceeding filed pursuant to West Virginia Code § 54-2-14a (1981) has the legal right to accept the condemning authority's estimate of just compensation without prejudicing such person's right to challenge that amount.

Armstead, Justice:

Orange Scherich, Margaret Scherich, Thomas Scherich, and Bertha Scherich[1] ("Petitioners") appeal the Circuit Court of Marshall County's final order dismissing the underlying eminent domain action. In 1990, the Wheeling Creek Watershed Protection and Flood Prevention Commission[2] ("Respondent") filed a condemnation proceeding under West Virginia's quick-take statute against Petitioners' property. *See* W. Va. Code § 54-2-14a (1981). After Respondent asked for and received right of entry and Petitioners asked for and received Respondent's estimate of just compensation, in 1991, the matter lay dormant for twenty-seven years.

In October 2018, Petitioners filed a "Motion for Further Proceedings to Determine Just Compensation." In response, the circuit court noticed and conducted a status hearing "as a result of but *not to address* the" motion. During that status hearing, without giving notice or the opportunity to respond, the circuit court *sua sponte* dismissed this condemnation proceeding. In its final order, without citing to any legal authority, the circuit court concluded that estoppel, laches, and any applicable statutes of limitation or repose "prevent[ed Petitioners] from resurrecting this matter." Additionally, the circuit court *sua sponte* found that Petitioners' withdrawal of Respondent's estimate of just

---

[1] It is alleged in the pleadings that three of the four named parties have passed away and that only Bertha Scherich is still living. Upon remand, the circuit court should determine the proper parties. *See* W. Va. Code § 54-2-2 (1957).

[2] Respondent was created in 1967 by an interstate compact with the Commonwealth of Pennsylvania. *See* W. Va. Code §§ 29-1F-1–5 (1967 & 1978).

1

compensation "without further proceedings until now [was] sufficient proof of accord and satisfaction such that [Petitioners] have no further right or claim to this matter." Petitioners appealed the circuit court's final order.

Upon review of the record, hearing the arguments of counsel, and copious research of the pertinent legal authorities, we conclude that the circuit court erred. Accordingly, for the reasons set forth below, we reverse and remand this matter for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 1990, Respondent filed a condemnation proceeding seeking acquisition of two parcels of land owned by Petitioners, including all oil and gas rights. These two parcels are designated by Respondent as Parcels 16 & 45, with Parcel 16 containing 220 ½ acres and Parcel 45 containing 15 acres and are located along Dunkard Fork, a tributary of Wheeling Creek in Webster District, Marshall County, West Virginia. According to the condemnation petition, these two parcels are "necessary . . . for the purpose of constructing a dam structure and for provision of sufficient land surrounding said dam for its construction, access thereto, and for a permanent pool, flood pool, reservoir, and emergency spillway." This dam is a part of a watershed-wide project to protect persons and property from floods. In its condemnation petition, Respondent noted that it intended to deposit its estimate of just compensation for the condemned property with the clerk of the circuit court in the amount of $97,000.00, which estimate Respondent

2

averred to be "a fair value of the said land and all of the oil and gas appurtenant thereto, including both the life estates and the remainder interests."

Petitioners filed their answer to the condemnation petition on June 14, 1990, in which they disputed Respondent's estimate of just compensation and stated that Respondent was "seeking to take excessive land beyond the needs for construction access in the creation of permanent pool, flood pool, reservoir, and emergency spillway." Following Petitioners' answer and after hearing arguments of counsel, the circuit court entered an order on June 15, 1990, which allowed Respondent to deposit its estimate of just compensation with the circuit clerk and "permitted [Respondent] to immediately acquire title to, enter upon, take possession, appropriate and use the lands sought to be condemned in this proceeding for the purposes stated in its [condemnation] Petition." That order further found that "the lands sought to be acquired in this proceeding are necessary for [Respondent's] use for the purposes aforesaid and are not in excess of the quantity reasonably necessary for such purposes." By operation of the provisions of West Virginia Code § 54-2-14a, the title granted Respondent by that order was "defeasible until the compensation and any damages are determined in the condemnation proceedings and [Respondent] has paid any excess amount into court." The order granting defeasible title to Respondent was recorded on the same day in the Office of the Clerk of the County Commission of Marshall County, West Virginia, in Deed Book 551 at Page 652.

3

On May 7, 1991, Petitioners moved to have Respondent's estimate of just compensation paid over to them. The circuit court entered an order on May 30, 1991, directing the circuit clerk to pay the previously deposited monies over to Petitioners, inclusive of interest that had accrued. The total amount paid over to Petitioners was $101,963.07.

Following such payment, nothing further occurred in the matter for nearly three decades. On October 3, 2018, Petitioners filed a "Motion for Further Proceedings to Determine Just Compensation." This motion sought to "conduct further proceedings in this matter as are necessary to comport with the law and West Virginia Constitution" by allowing Petitioners to challenge the taking of their oil and gas rights, determine just compensation, and vest Respondent with indefeasible title. Following the filing of the motion, the circuit court set a status hearing "as a result of *but not to address*" Petitioners' motion.

However, at that status hearing, the circuit court proceeded to address Petitioners' motion, and, indeed, denied the motion. In its final order dated October 22, 2019, the circuit court found:

> Given the time between the filing of [Petitioners'] motion for further proceedings and the last activity in this matter – a period of over twenty-seven years – the [c]ourt **FINDS** that this matter has been concluded; and that any claims of deficiency in the due process afforded the [Petitioners was] waived by [Petitioners]. Furthermore, the doctrines of estoppel and laches, as well as potentially any

4

statute of limitation or repose, prevent [Petitioners] from resurrecting this matter. Finally, the [c]ourt believes the acceptance of the deposited funds, as evidenced by the last order entered in this matter on May 30, 1991[,] disbursing such funds to [Petitioners], without further proceedings until now, is sufficient proof of accord and satisfaction such that [Petitioners] have no further right or claim in this matter.

It is from entry of the final order that Petitioners appeal.

## II. STANDARD OF REVIEW

This appeal is unusual in that the parties do not agree as to the applicable standard of review. Petitioners allege that the final order was a dismissal pursuant to West Virginia Rule of Civil Procedure 41(b), and that on review we must determine whether the circuit court abused its discretion in issuing that order. *See* Syllabus Point 1, *Tolliver v. Maxey*, 218 W. Va. 419, 624 S.E.2d 856 (2005). In *Tolliver*, we explained:

> With regard to Rule 41(b), and its related statutory provision, *W. Va.Code,* 56–8–12 (1923), the syllabus point in *Murray v. Roberts,* 117 W.Va. 44, 183 S.E. 688 (1936), holds:
>
>> A motion to reinstate a dismissed action under the terms of *Code,* 56–8–12 [W. Va. R.C.P. 41(b) ], is addressed to the sound discretion of the trial court, and, in the absence of a showing of abuse of that discretion, the action of the trial court upon such motion will not be disturbed upon writ of error. *Higgs v. Cunningham,* 71 W.Va. 674, 77 S.E. 273 [1913].
>
> Syl. pt. 1, *Covington v. Smith,* 213 W.Va. 309, 582 S.E.2d 756 (2003). *See also,* Syl. pt. 4, *White Sulphur Springs v. Jarrett,* 124 W.Va. 486, 20 S.E.2d 794 (1942), holding that a trial court, "upon a motion to reinstate a suit or action, under *Code,* 56–8–12, is vested with a sound discretion with

5

respect thereto; but that discretion can only operate on evidence tending to establish facts upon which a finding can be based." Syl. pt. 1, *Belington Bank v. Masketeers Company,* 185 W.Va. 564, 408 S.E.2d 316 (1991); syl., *Snyder v. Hicks,* 170 W.Va. 281, 294 S.E.2d 83 (1982); 6A M.J., *Dismissal, Discontinuance and Nonsuit* § 18 (2001).

*Id.*, 218 W. Va. at 423, 624 S.E.2d at 860.

Respondent counters that the final order was a grant of summary judgment pursuant to West Virginia Rule of Civil Procedure 56(c). Under this Rule, we have long held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

We do not have to resolve this disagreement in order to address the errors assigned to the circuit court by this appeal because it is clear that, regardless of which standard applies, the circuit court erred in *sua sponte* dismissing this matter without notice to the parties and affording them the opportunity to be heard. The circuit court further erred in concluding that Petitioners bore the burden of pursuing this matter and that their claims were barred by accord and satisfaction.

## III.  ANALYSIS

A.  *Sua Sponte* Dismissal

The text of Rule 41(b) of the West Virginia Rules of Civil Procedure

provides:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.

> Any court in which is pending an action wherein for more than one year there has been no order or proceeding, or wherein the plaintiff is delinquent in the payment of accrued court costs, may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued. The court may direct that such order be published in such newspaper as the court may name. The court may, on motion, reinstate on its trial docket any action dismissed under this rule, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after entry of the order of dismissal or nonsuit; but an order of reinstatement shall not be entered until the accrued costs are paid.

> Before a court may dismiss an action under Rule 41(b), notice and an opportunity to be heard must be given to all parties of record.

W. Va. R. Civ. P. 41(b).[3]  To comply with the last paragraph of this Rule, this Court has established a series of eight guidelines.  *See* Syllabus Point 3, *Dimon v. Mansy*, 198 W. Va. 40, 479 S.E.2d 339 (1996) (setting forth specific procedures for a circuit court to follow when dismissing a matter under Rule 41(b)).

Correspondingly, under Rule 56(c) of West Virginia Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c).  This Rule is silent as to whether a circuit court can grant summary judgment on its own accord and we have held that "[o]rdinarily, in the absence of a written motion for summary judgment by one of the parties, the court is not authorized *sua sponte* to grant a summary judgment."  Syllabus Point 2, *Gavitt v. Swiger*, 162 W. Va. 238, 248 S.E.2d 849 (1978), *quoted in* Syllabus Point 2, *State ex rel. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hummel*, ___ W. Va. ___, 850 S.E.2d 680 (2020).  Nonetheless, a circuit court may *sua sponte* grant summary judgment so long as notice and an opportunity to be heard are provided to the parties:

> As a general rule, a trial court may not grant summary judgment *sua sponte* on grounds not requested by the moving party. An exception to this general rule exists when a trial court

---

[3] This Rule of Civil Procedure provides that a "defendant may move for dismissal" when a "plaintiff [fails] to prosecute" its claim.  In this condemnation matter, the Respondent is the "plaintiff" below, who urges this Court that dismissal was appropriate, while the Petitioners, who are the "defendants" below, seek to maintain the action.

provides the adverse party reasonable notice and an opportunity to address the grounds for which the court is *sua sponte* considering granting summary judgment.

Syllabus Point 4, *Loudin v. Nat'l Liab. & Fire Ins. Co.*, 228 W. Va. 34, 716 S.E.2d 696 (2011), *quoted in* Syllabus Point 3, *Hummel*.

Here, the circuit court neither gave notice of its intent to dispose of this matter nor afforded Petitioners the opportunity to address the grounds upon which the circuit court was considering for dismissal. The circuit court did not provide any analysis of the *Dimon* factors and did not follow this Court's decision in *Loudin*. In fact, when Petitioners filed their motion, the circuit court specifically stated that the status hearing set in response was "as a result of *but not to address*" the motion. By stating as such, the circuit court told all parties that it was not going to take any substantive action on the pending motion and then proceeded to do so. When Petitioners arrived for the status hearing and the circuit court ruled, they were blindsided by the circuit court's actions. Applying our prior law, we find that the circuit court erred by failing to notify the parties of its intent to dispose of this matter under either Rule 41(a) or Rule 56(c) and provide them a meaningful opportunity to respond and be heard.

B.     Substantive Errors Raised By This Appeal

Petitioners further allege that the circuit court erred in reaching several specific conclusions contained in its October 22, 2019, order. Although we find that the *sua sponte* dismissal of this action without notice and an opportunity to be heard requires

9

reversal of the circuit court's order, we believe that other substantive errors contained in the circuit court's order must be addressed to aid the circuit court on remand.

Petitioners assert that the taking of their oil and gas was not necessary for Respondent's project and, by implication, exceeded the land needed for public use. The parties also disagree as to who has the burden of seeing that a condemnation proceeding reaches its final adjudication. Petitioners argue that is Respondent's burden. Respondent counters that this is Petitioners' responsibility.

Petitioners also draw our attention to the doctrines espoused by the circuit court to preclude further prosecution of this matter. These were: 1) estoppel, laches, and any applicable statutes of limitation or repose "prevent[ed Petitioners] from resurrecting this matter;" and 2) Petitioners' withdrawal of Respondent's estimate of just compensation "without further proceedings until now [was] sufficient proof of accord and satisfaction."

We will discuss each of these issues, in turn.

1.    Public Use

The long-standing principle that the government may only take private property for public use upon payment of just compensation is enshrined in both the United States and West Virginia Constitutions. "[N]or shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. "Private property shall not be

taken or damaged for public use, without just compensation." W. Va. CONST. art. III, § 9.

The Legislature has conferred the right of eminent domain upon Respondent by statute.

*See* W. Va. Code § 29-1F-1, art. VI(c) (1978).

Respondent filed its condemnation proceeding pursuant to the provisions of

West Virginia Code § 54-2-14a. This statute allows a condemning authority to pay into

the circuit court its estimate of just compensation upon a finding of public use and gives

the condemning authority the right to enter and appropriate the property necessary for its

project. *Id*. Our previous cases refer to this point in the process as a "right of entry." *See*,

*e.g.*, *State ex rel. W. Va. Dept. of Transp. v. Tucker*, 241 W. Va. 307, 310, 824 S.E.2d 534,

537 (2019). Under our statute, a right of entry must be granted if the circuit court finds

that "the purpose for which the property . . . is sought to be condemned is a public use for

which private property may be appropriated on compensating the owner." W. Va. Code §

54-2-14a. This finding is solely for the circuit court:

> In a condemnation proceeding, the circuit court is
> charged with determining whether the applicant has a lawful
> right to take property for the purposes stated in the
> condemnation petition. The circuit court determines, as a
> matter of law, whether a property may lawfully be taken. The
> property may lawfully be taken if the applicant's expressed use
> of the property is, in fact, a public one, and the condemnation
> is not impelled by bad faith or arbitrary and capricious motives.

Syllabus Point 1, *Gomez v. Kanawha Cty. Comm'n*, 237 W. Va. 451, 787 S.E.2d 904

(2016). Once that issue is resolved, "[i]n the absence of egregious bad faith, if the use is a

public one, the necessity for the designated property is not open to judicial review."

11

*Gomez*, 237 W. Va. at 460, 787 S.E.2d at 913, *quoting United States v. 49.79 Acres of Land, More or Less, Situate in New Castle Cty., State of Del.*, 582 F. Supp. 368, 372 (D. Del. 1983).

Here, after hearing the arguments of counsel, the circuit court made findings in its June 15, 1990, order that "for the purposes mentioned in [the condemnation] Petition," "the lands sought to be acquired in this proceeding are necessary for [Respondent's] use for the purposes aforesaid and are not in excess of the quantity reasonably necessary for such purposes." Petitioners make no allegation that these findings by the circuit court were erroneous or that the taking was in egregious bad faith. Petitioners merely don't agree that the taking was necessary. Thus, absent any argument that satisfies *Gomez*, we find the circuit court's June 15, 1990, order resolved the issue of public use of the property described in the condemnation petition and is not subject to further review.

2.      Burden of Prosecuting A Condemnation Action

The next issue raised in this appeal relates to which party has the responsibility of ensuring that a condemnation action is properly concluded. Should that responsibility rest with the condemning authority or should that obligation devolve upon the landowner?

Respondent argues that this issue can be resolved simply by looking at who has the burden of proof during the trial of a condemnation matter. Our law has long held

that the owner of the property being taken in an eminent domain proceeding carries the burden of proving just compensation and damages to the residue. *See Buckhannon & N.R. Co. v. Great Scott Coal & Coke Co.*, 75 W. Va. 423, 441-42, 83 S.E. 1031, 1038 (1914); s*ee also United Fuel Gas Co. v. Allen*, 137 W. Va. 897, 902, 75 S.E.2d 88, 91 (1953) (the landowner "carr[ies] the burden of proving the value of the property, together with the damages to the residue."). Conversely, a condemning authority has the burden of proving benefits, if any, as a result of the project. *See Buckhannon & N.R. Co.*, 75 W. Va. at 442, 83 S.E. at 1038. This analysis of the parties' respective burdens of proof, however, does not end our inquiry.

An examination of our codified condemnation procedure[4] reveals that the plain meaning of West Virginia Code § 54-2-14a places the burden of moving forward and ensuring conclusion of a condemnation proceeding upon the condemning authority. Under our rules of statutory construction, which we are duty-bound to apply, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). "Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed

_____

[4] A more in-depth discussion of condemnation procedure can be found in *Edwin Miller Investments, L.L.C. v. CGP Dev. Co.*, 232 W. Va. 474, 477, 752 S.E.2d 901, 904 (2013).

13

therein." Syllabus Point 1, *Dunlap v. State Compensation Director*, 149 W. Va. 266, 140 S.E.2d 448 (1965). "Courts always endeavor to give effect to the legislative intent, but a statute that is clear and unambiguous will be applied and not construed." Syllabus Point 1, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syllabus Point 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970). "We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995).

The clear and unambiguous language in the condemnation procedures established by our Legislature in West Virginia Code § 54-2-14a shows that the burden of moving forward is squarely upon the condemning authority. As we discussed above, our Legislature first requires that the condemning authority demonstrate that the property being taken is necessary for a public use. *See* W. Va. Code § 54-2-14a; s*ee also* Syllabus Point 3, *Tucker*, 241 W. Va. 307, 824 S.E.2d 534 ("'The question what is a public use is always one of law.' Syllabus Point 2, in part, *Hench v. Pritt*, 62 W. Va. 270, 57 S.E. 808 (1907)" citing Syllabus Point 2, *Gomez v. Kanawha Cty. Comm'n*, 237 W. Va. 451, 787 S.E.2d 904 (2016)). Second, the statute requires the condemning authority to pay into court its estimate of just compensation to appropriate the land. *See* W. Va. Code § 54-2-14a. Third, once the public use is established and the condemning authority is granted its right of entry,

14

it only obtains a defeasible title. *Id.* It is only upon final award that the condemning authority's interest matures into absolute title. *Id.*; s*ee also Edwin Miller Investments, L.L.C.*, 232 W. Va. 474, 477, 752 S.E.2d 901, 904 ("Only after the commissioners' report or jury's verdict has been confirmed and ordered to be recorded, and the State pays into court the excess amount, if any, is title to the condemned real estate absolutely and indefeasibly vested in the State in fee simple.") Fourth, the condemning authority is required to pay ten percent interest per year on the difference between any amount awarded and its estimate of just compensation. *See* W. Va. Code 54-2-14a; *see also State ex rel. W. Virginia Dep't of Transportation, Div. of Highways v. Burnside*, 237 W. Va. 655, 661, 790 S.E.2d 265, 271 (2016) ("the incentive remains strong for the State to accurately calculate its tender, because if the amount ultimately allowed as just compensation—either by the commissioners' report or by a jury verdict—exceeds the estimate initially paid into court, the landowner is entitled to payment of the excess plus ten percent interest from the date of the [condemnation] petition.").

Fifth, the provisions of West Virginia Code § 54-2-14a provide, in pertinent part:

> If the applicant shall enter upon or take possession of the property, under the authority of this section, and shall injure the property, the applicant shall not be entitled, without the consent of the defendant, to abandon the proceeding for the condemnation thereof, but such proceeding shall proceed to final award or judgment, and the amount of compensation and any damages as finally determined in such proceeding shall be paid in the manner provided by this section.

W. Va. Code § 54-2-14a.  From this part of the statutory provisions, if a condemning authority enters the condemned land and injures it, the condemnation proceeding cannot be abandoned without the consent of the landowner.

Although we have had little occasion to discuss the abandonment provision of West Virginia Code § 54-2-14a in our prior decisions,[5] we have discussed the nearly identical provision contained in West Virginia Code § 54-2-15 (1981), which deals with a business corporation's authority to condemn land:

> If the applicant shall enter upon or take possession of the property under the provisions of this section, and shall do any work thereon, or cause any injury or damage to such property, it shall not thereafter be entitled, without the consent of the defendant, to abandon the proceeding for the condemnation thereof, but the same shall proceed with reasonable dispatch to a finality and the applicant shall pay to the owner of the land the amount of the compensation and damages as finally determined in such proceedings, with interest at ten percent from the date of the filing of the petition.

W. Va. Code § 54-2-15.

In *United Fuel Gas Co. v. Huffman*, 156 W. Va. 537, 538, 195 S.E.2d 171, 173 (1973), United Fuel was constructing a gas pipeline in Mercer County and filed a condemnation petition seeking an easement across .817 acre of Huffman's land.  United

---

[5] The only prior citation to this abandonment provision we uncovered in our research is found in *State ex rel. State Road Commission v. Taylor*, 151 W. Va. 535, 153 S.E.2d 531 (1967).  The issue in that matter was whether the condemning authority could delay the condemnation proceeding, not whether the proceeding was abandoned.  *Id.*, Syllabus Point 1.

Fuel thereafter entered Huffman's land and constructed the gas pipeline. *See id.* Land commissioners were appointed and determined the .817 acre to be valued at $4,485.00. *See id.*, 156 W. Va. at 538-39, 195 S.E.2d at 173. Both parties filed exceptions to the commissioners' award and sought a jury trial. *See id.*, 156 W. Va. at 539, 195 S.E.2d at 173. Thereafter, United Fuel sought to reduce its easement size from .817 acre to .20 acre. On these facts, we held in Syllabus Point 2:

> Under the provisions of Chapter 54, Article 2, Section 15 of Code, 1931, when a condemnor, pursuant to an order of a circuit court approving bond and granting an immediate right of entry, has provided security and has entered and exercised complete dominion over the land taken, it may not thereafter abandon a part of its original taking and reduce the amount of compensation.

*Id.*, 156 W. Va. 537, 195 S.E.2d 171.

In this case, the circuit court granted Respondent right of entry, who then injured the land by the public use of a dam and its attendant structures. Just like in the similar provisions in Section 15, Respondent cannot simply walk away from its obligations and point fault at the landowner as to why the condemnation proceeding has not been completed. We believe this sentiment was aptly stated by the Florida District Court of Appeal:

> A condemnor cannot simply sit idly by and avoid record activity hoping that the court will dismiss the cause for want of prosecution. The burden to proceed in [a condemnation proceeding] is *not* upon the landowner; that burden rests squarely upon the shoulders of the governmental entity which seeks to invoke the harsh procedures which result in the taking of private property.

17

*Div. of Admin., State of Fla., Dep't of Transp. v. Grossman*, 536 So. 2d 1181, 1183–84 (Fla. Dist. Ct. App. 1989).

Thus, when we take all of the provisions of West Virginia Code § 54-2-14a together we reach the inescapable conclusion that the condemning authority has the burden of ensuring that the condemnation action it initiated is brought to a conclusion. The inability to abandon a proceeding once filed, coupled with the harsh assessment of ten percent interest per year, and the lack of absolute title until a proceeding is concluded all point to the intention of our Legislature to zealously protect the public's fisc and discourage a condemning authority from allowing a condemnation proceeding to drag on forever. We reach this result because in a condemnation proceeding:

> The issue is in the nature of an inquisition on behalf of the public to determine the amount which should be awarded to the condemnee, in consideration of the involuntary appropriation of his private property to the public use through the instrumentality of an internal improvement company, or other recognized agent of the state, to whom she has delegated by general law, or otherwise, the right of eminent domain.

*Ohio River R. Co. v. Ward*, 35 W. Va. 481, 490, 14 S.E. 142, 146 (1891) (internal citations omitted). Accordingly, none of the legal theories raised *sua sponte* by the circuit court to foreclose Petitioners from seeking just compensation, namely, estoppel, laches, and any applicable statutes of limitation or repose, would "prevent [Petitioners] from resurrecting this matter" because a plain reading of the process contained in West Virginia Code § 54-

18

2-14a (1981) places the burden of ensuring a condemnation action reaches its conclusion upon the condemning authority.

3.    Acceptance of Estimate of Just Compensation.

Finally, the circuit court ruled that Petitioners were now barred from challenging Respondent's estimate of just compensation because Petitioners withdrew the amount from the circuit court and such acceptance was "accord and satisfaction." We disagree.

Again, the language of West Virginia Code § 54-2-14a guides us, providing in pertinent part:

> Upon petition to the court or judge, any person entitled thereto may be paid his pro rata share of the money paid into court, or a portion thereof, as ordered by the court or judge, but the acceptance of such payment shall not limit the amount to be allowed by the report of the condemnation commissioners, or the verdict of a jury, if there be one.

We need not provide a comprehensive analysis of accord and satisfaction, as by the operation of this code section, such concept does not apply. Under the plain text of the statute, our law is clear – a person entitled to proceeds of a condemnation proceeding filed pursuant to West Virginia Code § 54-2-14a (1981) has the legal right to accept the condemning authority's estimate of just compensation without prejudicing such person's right to challenge that amount.

19

## IV.  CONCLUSION

For the foregoing reasons, we believe the circuit court erred and reverse and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded with instructions.